**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CHARITABLE DAF FUND, L.P. AND CLO HOLDCO, LTD., DIRECTLY AND DERIVATIVELY** | § § § § | |
| *Plaintiff,* | § | |
| v. | § § | **Adv. Proc. No. 21-03067-sgj** **Civil Action No. 22-02802-S** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING LTD., NOMINALLY,** | § § § § § | |
| *Defendant.* | § | |

**OBJECTION TO BANKRUPTCY COURT REPORT AND RECOMMENDATION TO THE DISTRICT COURT ON "RENEWED" MOTION TO WITHDRAW THE REFERENCE [BANKR. DOC. NO. 128]**

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti
Texas Bar No. 24058096
Jonathan Bridges
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
jeb@sbaitilaw.com

***Counsel for Plaintiffs***

and

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**

Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

*Special Purpose for Plaintiffs for Withdrawal of Reference Motion*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................2

RELEVANT BACKGROUND .....................................................................................3

ARGUMENTS AND AUTHORITIES.........................................................................9

      A.      Whether This Is a Core Matter Is Irrelevant ................................................9

      B.      The Renewed Motion to Withdraw the Reference Was
             Timely .........................................................................................................10

             1.      The Motion Was Not Untimely Under the Circumstances....................11

             2.      Enforcing the Standing Order of Reference Was Not a
                    Ruling on Whether Mandatory Withdrawal of the Reference
                    Applies ...............................................................................................13

             3.      Subsequent Motions to Withdraw the Reference May Be
                    Required if Circumstances Change in a Case .......................................16

      C.      An Adjudication of the Renewed Motion to Dismiss Requires
             Consideration of Substantial and Material Questions Arising
             Under Federal Statutes ...............................................................................17

CONCLUSION.............................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Adelphia Commc'ns Corp. v. Rigas*,
  No. 02-CIV-8495, 2003 U.S. Dist. LEXIS 9349 (S.D.N.Y. June 4, 2003) .............................10

*Am. Freight Sys. v. ICC (In re Am. Freight Sys.)*,
  150 B.R. 790 (D. Kan. 1993) .............................................................................................121

*In re Am. Solar King Corp.*,
  92 B.R. 207 (W.D. Tex. 1988)..............................................................................................21

*Burger King Corp. v. B-K of Kan., Inc.*,
  64 B.R. 728 (D. Kan. 1986) ..........................................................................................12, 21

*Chatz v. World Wide Wagering*,
  No. 17 C 4229, 2018 U.S. Dist. LEXIS 240552 (N.D. Ill. 2018)...........................................11

City of New York v. Exxon Corp.
  932 F.2d 1020 (2d Cir. 1991)...............................................................................................10

*Clark v. Lomas & Nettleton Fin. Corp.*,
  79 F.R.D. 641 (N.D. Tex. 1978), *vac'd on other grounds*,
  625 F.2d 49 (5th Cir. 1980) ..................................................................................................20

*Goldstein v. SEC*,
  451 F.3d 873 (2006).............................................................................................................22

*Haigler v. Dozier (In re Dozier Fin., Inc.)*,
  No. 4:18-cv-1888-AMQ-SVH, 2018 U.S. Dist. LEXIS 220354 (D.S.C. 2018)......................20

*In re Am. Solar King Corp.*,
  92 B.R. 207 (W.D. Tex. 1988)..............................................................................................20

*In re Bevill, Bresler & Schulman Asset Management Corp.*,
  67 Bankr. 557 (D. N.J. 1986) ...............................................................................................20

*In re Contemp. Lithographers, Inc.*,
  127 B.R. 122 (M.D.N.C. 1991).......................................................................................19, 20

*In re Electro-Mechanical Indus.*,
  No. 07-36393, 2008 Bankr. LEXIS 5177 (Bankr. S.D. Tex. 2008) .........................................1

*In re Enron Creditors Recovery Corp.*,
  410 B.R. 374 (S.D.N.Y. 2008)..............................................................................................12

*In re Hartley*,
    55 B.R. 781 (N.D. Ohio 1985) ........................................................................ 21-22

*In re Ionosphere Clubs*,
    922 F.2d 984 (2d Cir. 1990) ................................................................................ 19

*In re Nat'l Gypsum Co.*,
    145 B.R.539 (N.D. Tex. 1992) ........................................................................ 17, 21

*In re Reed*,
    No. CV 17-908, 2017 WL 1788295 (E.D. La. May 5, 2017) ................................. 16

*In re Sevko, Inc.*,
    143 B.R. 114 (N.D. Ill. 1992) ............................................................................... 12

*In re U.S.A. Floral Products, Inc.*,
    No. 01-1230, 2005 WL 3657096 (D. Del. July 1, 2005) .................................. 11-12

*Interconnect Telephone Services, Inc. v. Farren*,
    59 B.R. 397 (S.D.N.Y. 1986) ...................................................................12, 13, 14

*Laborers' Pension Trust Fund-Detroit and Vicinity v. Kiefer (In re Kiefer)*,
    276 B.R. 196 (E.D. Mich. 2002) .......................................................................... 18

*Mich. Milk Producers Asso. v. Hunter*,
    46 B.R. 214 (N.D. Ohio 1985) ............................................................................... 2

*Murray v. Warren County Sheriff's Dept. (In re Avtex Fibers-Font Royal, Inc.)*,
    No. 90-20290 ...................................................................................................... 18

*NexPoint Diversified Real Estate Fund v. Acis Capital Management et al.*
    21-cv-4384 (2d Cir.) ........................................................................................... 22

*NexPoint Diversified Real Estate Fund v. Acis Capital Management et al.*
    Case 1:21-cv-04384 (S.D.N.Y) ............................................................................ 22

*Picard v. JPMorgan Chase & Co., et al.*,
    454 B.R. 307 (S.D.N.Y.2011) .............................................................................. 23

*Pilipovic v. Rice (In re Pilipovic)*,
    No. 4:15-CV-00861, 2015 U.S. Dist. LEXIS 155741 (E.D. Mo. 2015).................. 11

*Price v. Craddock*,
    85 B.R. 570 (D. Colo. 1988) ................................................................................ 20

*S.C. Nat. Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990) .................................................................... 20-21

*Schlein v. Golub (In re Schlein)*,
    188 B.R. 13 (E.D. Pa. 1995) ...................................................................12, 21

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    486 B.R. 579 (S.D.N.Y. 2013)............................................................ 9-10, 11, 12

*Sibarium v. NCNB Texas Nat. Bank*,
    107 B.R. 108 (N.D. Tex. 1989)...................................................................17

*Transamerica Mortg. Advisors (tama) v. Lewis*,
    444 U.S. 11 (1979).......................................................................................18

*United States v. Kaplan*,
    146 B.R. 500 (D. Mass. 1992) ....................................................................12

*U.S. Gypsum v. National Gypsum*,
    145 B.R. 539 (N.D. Tex. 1992).............................................................10, 16

## **Rules**

Fed. R. Civ. P. 54(a) ..........................................................................................15

Northern District of Texas Bankruptcy Court, Local Rule 5011-1 ......................... 14-15

## **Statutes**

15 U.S.C. § 10b-6(4)...........................................................................................22

 28 U.S.C. § 157...............................................................................................2, 14

28 U.S.C. § 157(d) ...................................................................................... *passim*

Investment Advisers Act of 1940 ..................................................................... *passim*

## **Other Authorities**

17 C.F.R. § 275.206(4)-8 ......................................................................................2

130 Cong. Rec. 6244 (1984)................................................................................21

Norton and  Collins on Bankruptcy ......................................................................14

Weintraub and Resnick, *Bankruptcy Law Manual,* 6-15 (rev. ed. 1986) ......................20

**PLAINTIFFS' OBJECTION TO BANKRUPTCY COURT REPORT AND RECOMMENDATION TO THE DISTRICT COURT ON "RENEWED" MOTION" TO WITHDRAW THE REFERENCE [BANKR. DOC. NO. 128]**

Plaintiffs The Charitable DAF Fund (the "Fund") and CLO Holdco, Ltd. ("Holdco") (together, the Fund and Holdco, "Plaintiffs") file this *Objection* (the "Objection") to the *Report and Recommendation to the District Court on Renewed Motion to Withdraw the Reference* [Dkt. No. 157][1] (the "Report and Recommendation") issued by the bankruptcy court pursuant to Local Bankruptcy Rule 5011-1. The Report and Recommendation held that the *Motion to Withdraw the Reference* [Dkt. No. 128] (the "Renewed Motion to Withdraw") should be denied because it was untimely, is an impermissible second motion to withdraw the reference (because this Court has already ruled upon a prior motion to withdraw reference), and this proceeding does not require substantial and material consideration of significant interpretation of federal laws as required by 28 U.S.C. § 157(d). The Report and Recommendation was transmitted to the District Court on February 6, 2023.

---

[1] Unless otherwise referenced herein, Dkt. No. references are to Adv. Proc. No. 21-03067-sgj.

## PRELIMINARY STATEMENT

1.      The Report and Recommendation is rife with error in its interpretation of timeliness and improperly relies upon the core nature of the proceeding. The case law is clear that "timeliness" under 28 U.S.C. § 157(d) generally refers to a prejudice. And it is undisputed that that statute applies equally to core and non-core matters.

2.      Further, the Bankruptcy Court's holding that this Court's previous enforcement of the standing order of reference under § 157 was tantamount to a denial of the previous motion to withdraw the reference.  This Court is obviously the arbiter of what it meant by its ruling; however, as shown below, neither the record nor the language of the Order of Reference support anything other than enforcement of the Standing Order of Reference (defined herein).

3.      Furthermore, one can hardly deny that the bankruptcy court, during the hearing on the Defendant's original Motion to Dismiss, stated that it was effective sitting as a magistrate to Judge Boyle—a position that would only be true if the reference were withdrawn. Despite this seeming acknowledgement as to the validity of withdrawing the reference, the bankruptcy court revised its position and issued an opinion dismissing the case—but only on grounds that would not have applied to a mandatory withdrawal of the reference (e.g., judicial and collateral estoppel). It was thus only *after* this Court's order reversing that Opinion, and Defendants' renewal of the motion to dismiss putting the merits at issue, that mandatory withdrawal became ripe again.

4.      The Plaintiffs thus filed the Renewed Motion to Withdraw as soon as practicable after it became clear that this proceeding would be adjudicated based upon the substantial and material consideration of the Investment Advisers Act of 1940 (the "Advisers Act"). The Advisers Act is part of the securities laws. No case we undersigned could find has *denied* Mandatory Withdrawal of the Reference where securities laws were in place—all of have held that application

2

of the securities laws to the evidence requires "substantial and material" consideration of those laws. No case cited by the Defendant and no case cited by the bankruptcy court held otherwise.

5.      Therefore, 28 U.S.C. § 157(d)'s mandatory withdrawal provision applies, the Report and Recommendation should be rejected, and this proceeding should be brought back to this Court under 28 U.S.C. § 157(d).

## RELEVANT BACKGROUND

6.      On April 12, 2021, the Plaintiffs commenced this civil action in this District Court by case No. 21-00842-B (the "Civil Action"), against Highland Capital Management, L.P. ("Highland") asserting causes of action for:

- Breaches of Fiduciary Duty for Highland's breach of that certain Amended and Restated Investment Advisory Agreement (the "Advisory Agreement") between itself and the Fund;

- Breach of that certain Members Agreement Relating to HCLOF (the "Company Agreement");

- Negligence for breaches of the Adviser's Act;

- Racketeering Influenced Corrupt Organizations Act ("RICO"); and

- Tortious interference related to the Company Agreement.

APP_014-028.

7.      On May 19, 2021, Highland filed the *Motion to Enforce the Reference* (the "Motion to Enforce") requesting that the District Court enforce the United States District Court for the Northern District of Texas' standing order of reference (Mis. Order. 33) (the "Standing Order of Reference").

8.      On May 27, 2021, Highland also filed that certain *Motion to Dismiss Complaint* (the "First Motion to Dismiss"). In the First Motion to Dismiss, Highland argued that:

All of Plaintiffs' claims are barred by the doctrines of res judicata because they are

3

identical to those previously litigated, and fully decided, in [a prior proceeding before the Bankruptcy Court (the "Prior Proceeding)"]. Certain claims are subject to judicial estoppel because they seek to assume positions that are inconsistent with those previously asserted [in the Prior Proceeding]. This contradicts Plaintiffs' voluntarily withdrawal of this same contention in the Prior Proceeding. Plaintiffs also fail to state any claims for relief that are plausible on their face under Rule 12(b)(6).

APP_087, ¶4.

9.      On June 29, 2021, the Plaintiffs filed that certain *Response to Defendant's Motion for an Order to Enforce the Order of Reference and Cross Motion*. APP_112-138. In the Response and Cross Motion, the Plaintiffs argued that there was no reason to refer the Civil Action to the bankruptcy court, only to have it return on a motion to withdraw the reference, so the district court should not enforce the Standing Order of Reference. *Id*. The Plaintiffs argued that: withdrawal of the reference is mandatory because the Complaint relies extensively on and largely is predicted on the Advisers Act. *Id*. In essence, Plaintiffs argued that it was unnecessary to follow the Standing Order of Reference because the bankruptcy court would have to recommend withdrawal under 28 U.S.C. § 157(d).

10.      In its *Reply* (the "<u>Reply</u>"), Highland argued that rather than being a waste of judicial resources to enforce the order of reference:

> Granting the Motion would give this Court the benefit of the Bankruptcy Court's recommendation on mandatory withdrawal as required by the local rules, which require a party to file a motion for withdrawal with the bankruptcy clerk so the bankruptcy court can make a report and recommendation to this Court. This is particularly important here as the Bankruptcy Court is very familiar with the parties and the issues, having conducted the evidentiary hearing to approve the HarbourVest Settlement. **<u>The Bankruptcy Court's report and recommendation will aid this Court in analyzing whether withdrawal is appropriate.</u>** Plaintiffs' attempts to maneuver around the Bankruptcy Court should not be rewarded.

APP_150, ¶18 (emphasis supplied).

4

11.     On September 20, 2021, the district court entered that certain *Order of Reference* [Dkt. No. 1] (the "Order of Reference") (APP_153) in which the district court referred the Civil Action to be adjudicated as a proceeding related to the Highland Bankruptcy Case.[2] In other words, because the Civil Action was "related" to the Highland Bankruptcy Case, the Standing Order of Reference was effective and controlling.

12.     On November 23, 2021, the Bankruptcy Court held a hearing on a motion to stay and the First Motion to Dismiss (the "November 23 Hearing"). APP_154-258 (the "November 23 Transcript"). At the November 23 Hearing, Highland did an about-face from its position before the District Court that it would be best for the Bankruptcy Court to decide and recommend to this Court whether it believed mandatory withdrawal of the reference was required under 28 U.S.C. § 157(d), and instead argued that any attempt to raise the issue of mandatory withdrawal of reference in Bankruptcy Court at that time would be **sanctionable**. APP_175-177 (21:19-23:15).[3]

13.     As to the Order of Reference, Highland took the position that rather than merely enforcing the Standing Order of Reference, the District Court, by enforcing the Standing Order of Reference, actually ruled that mandatory withdrawal of the reference could not apply. November 23 Transcript, p. 23:20-21. Highland stated that: "if they do file a motion for withdrawal of the reference in light of the facts as I just stated them, we will seek sanctions." APP_177-178 *Id* (23:24-24:1).

14.     However, during the November 23 Hearing, the bankruptcy court clearly

---

[2] Case No. 19-34054-sgj11.

[3] "Plaintiffs now flout the district court's order of 11 reference by telling the Court that if the Court does not stay the matter, they will file a motion to withdraw the reference before Your Honor, and they attach virtually identical pleading that they filed in opposition to our motion to enforce the reference."

announced that it was acting as though the issue of whether the question of mandatory withdrawal if reference was alive, and that in fact, the Bankruptcy Court had determined to recommend to this Court that the Standing Order of Reference be withdrawn.

15.     Further, as shown below, after this Court issued its Order of Reference the Bankruptcy Court, at the November 23 Hearing, when considering the Motion to Dismiss, the Bankruptcy Court stated that:

> As a reminder, I don't think you need it, but as a reminder, **I am essentially acting as a magistrate for Judge Boyle in this action**. And whichever way I go on whichever theories, I think she would expect a thorough write-up. It would, of course, be in the form of a report and recommendation for her to either adopt or not if I dispose of some or all of the counts in the lawsuit. Even to the extent I deny dismissal, even though the rule typically does not require a court to make detailed findings and conclusions in connection with a denial of a motion to dismiss, again, since I'm sitting as a magistrate, I think Judge Boyle would expect some thorough explanations and reasoning from me.

APP_257 (103:2-14).

16.     Therefore, it was clear at the November 23 Hearing that the bankruptcy court was considering the First Motion to Dismiss as though the reference was withdrawn, or at least that the bankruptcy court had determined that it should be withdrawn.   One can hardly react to that statement and conclude that Plaintiffs were under an obligation to demand that the bankruptcy court adjudicate the issue of whether 28 U.S.C. § 157(d)'s mandatory withdrawal provision applied.

17.     However, and notwithstanding the bankruptcy court's announced determination that it was "acting as a magistrate" and would be issuing a ruling "in the form of a report and recommendation", on March 11, 2022, the bankruptcy court issued its *Memorandum Opinion and Order Granting Motion to Dismis*s (the "Opinion") in which the Bankruptcy Court determined that the claims asserted in the Complaint were barred by collateral estoppel and judicial estoppel.

APP_274-285. Plainly, *that* decision did not implicate in any way the bases for withdrawal of the reference because they did not consider non-Code federal statutes at all. It was only after the motion to dismiss was re-urged on the merits that the issues for withdrawal became ripe again.

18.     Moreover, the bankruptcy court's Opinion was <u>not</u> accompanied by a judgment as required by Fed. R. Civ. P. 54.  Subsections a-c are incorporated into Fed. R. Bankr. P. 7054.  As this Court is aware, Fed. R. Civ. P. 54 (a) requires a separate judgment be issued. So, upon its issuance, the original Opinion was not in fact a final judgment, and therefore, it was in substance nothing more than a Report and Recommendation. Of course, hindsight being 20/20, Plaintiffs should not be faulted for following the safest course of action and appealing the Opinion.

19.     On September 2, 2022, the District Court reversed and remanded the Bankruptcy Court Opinion [Dkt. No. 131]. Specifically, the District Court found that *res judicata* could not apply and that the Bankruptcy Court erred in dismissing upon the doctrine of judicial estoppel due to failure to conduct the proper judicial estoppel analysis. The merits were not argued or reached.

20.     On remand, on October 14, 2022, Highland filed a *Renewed Motion to Dismiss* (the "<u>Renewed Motion to Dismiss</u>") in which Highland moved to dismiss counts 1, 3, and 5 solely for failure to state a claim turning on its interpretation of the Advisers Act.  APP_295-302, 303-333. Well before responding to the Renewed Motion to Dismiss, the Plaintiffs filed the Renewed Motion to Withdraw, re-urging the position that mandatory withdrawal of the reference under 28 U.S.C. § 157(d) was required so that the Civil Action was to be adjudicated in the District Court.

21.     Highland filed a *Response and Brief in Support* (the "<u>Objection</u>") arguing that the Renewed Motion to Withdraw was untimely. Remarkably, Highland—the same party who threatened sanctions if the Plaintiffs filed a motion to withdraw immediately after the Order of Reference was entered—asserts that the Plaintiffs should have filed a motion to withdraw the

reference anyway before the November 2021 deadline to respond. *See* APP_362-63, ¶ 27. Highland's tactics smack of bullying. Highland also argued that 28 U.S.C. § 157(d) could not apply expressly because "[t]he Renewed MTD Does Not Require 'Substantial and Material Consideration' of Significant Federal Laws." APP_363-67 at I(b).

22.     On January 25, 2023, the bankruptcy court held a hearing on the Renewed Motion to Dismiss and the Renewed Motion to Withdraw (termed a "status conference," regarding the Renewed Motion to Withdraw, under the bankruptcy court's local rules). At the hearing, the bankruptcy court orally denied the Renewed Motion to Withdraw. On February 6, 2022, the bankruptcy court entered its Report and Recommendation.[4]

23.     In the Report and Recommendation, the bankruptcy court characterizes the Renewed Motion to Dismiss as untimely because it was filed after "(a) the bankruptcy court made a final ruling on a motion to dismiss, (b) Judge Boyle ruled on that final bankruptcy court ruling in an appellate capacity, and (c) remanded back to the bankruptcy court for further proceedings." APP_362. But even worse, according to the Bankruptcy Court, the Renewed Motion to Dismiss is a "proverbial second bite at the apple" because it was filed after the Renewed Motion to Dismiss asks the Bankruptcy Court to "this time rule on merits of the claims (which the bankruptcy court did not do last time)." APP_363.

24.     In the Report and Recommendation, the bankruptcy court as well devotes multiple pages to the analysis that the claims asserted in the Complaint are core proceedings, administrative claims, and the kinds of proceedings (core, administrative) that do not afford a jury trial right and are the kind overseen by the bankruptcy court routinely. As we show below, this analysis misses

---

[4] The Bankruptcy Court took under advisement the Renewed Motion to Dismiss.

the mark entirely, as mandatory withdrawal of the reference is not limited to "related-to" proceedings and is applicable to any type proceeding in the bankruptcy court —core, non-core, pre-petition, or post-petition. The focus by the bankruptcy court upon core "jurisdiction" (when in fact the question is always whether the bankruptcy court has authority to finally adjudicate) is a straw-person argument, and reveals the extent of error committed. If a proceeding referred to a bankruptcy court is of a kind subject to 28 U.S.C. § 157(d), then withdrawal of reference is mandatory. Period.

25.     The bankruptcy court goes on to find that 28 U.S.C. § 157(d) does not apply regardless of timeliness because "No 'substantial and Material Consideration' and 'Significant Interpretation of Federal Laws' are Implicated Here; This is At Bottom a Request for Allowance of an Administrative Expense Claim." APP_364b Of course, the fact that a proceeding is an administrative expense claim is of no moment, as discussed above and shown below.

## ARGUMENTS AND AUTHORITIES

### A.  WHETHER THIS IS A CORE MATTER IS IRRELEVANT

26.     The Bankruptcy court spends much time on the irrelevant analysis underlying its determination that the causes of action in the Complaint are "tantamount to the assertion of administrative expense claim" and are core matters over which the bankruptcy court has core jurisdiction. APP_364, § C. Eventually, the bankruptcy court reaches the conclusion that "'Claims against the estate' is what's implicated here" and such claims were required to be filed in the bankruptcy court. APP_365.

27.     It is of no moment if this Civil Action is a request for an administrative claim or is a "core" proceeding. "Mandatory withdrawal does not depend on whether a matter falls within the bankruptcy court's 'core' or 'non-core' jurisdiction." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC*, 486 B.R. 579, 582 (S.D.N.Y. 2013) (citing *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991)). Indeed, 28 U.S.C. § 157(d) expressly applies to "**any** proceeding." There are no modifiers for "core" or "non-core" or anything else. The Northern District of Texas has applied § 157(d) to core proceedings. *See, e.g., U.S. Gypsum v. National Gypsum*, 145 B.R. 539, 542 (N.D. Tex. 1992) (applying § 157(d) to withdraw reference on decision of proof of claim, a core proceeding).

28.     Therefore, that the case *might* be a core proceeding is irrelevant. Of further note is that this case surrounds application of the securities laws—a subject that the bankruptcy court is not expected to have superior expertise in managing. *Accord Adelphia Commc'ns Corp. v. Rigas*, No. 02 CIV.8495, 2003 U.S. Dist. LEXIS 9349 at *7 (S.D.N.Y. June 4, 2003) (finding that federal securities claim was non-core and was not something which the bankruptcy court would ordinarily be expected to have greater familiarity or expertise).

29.     There is no dispute that allowance of administrative expense claims are core matters over which the bankruptcy court generally has authority. But whether a proceeding is "core" or an administrative expense proceeding is irrelevant to an analysis under 28 U.S.C. § 157(d).

**B.   THE RENEWED MOTION TO WITHDRAW THE REFERENCE WAS TIMELY.**

30.     The bankruptcy court puts much emphasis on what it termed "a proverbial second bite at the apple" as indicative of the untimeliness of the Renewed Motion to Withdraw.[5] There

---

[5] However, the bankruptcy court in its pejorative assertions never mentions its prior announcements concerning its view that it was acting as a magistrate and that its ruling would be a report and recommendation to be adopted or not. Rather, it excoriates Plaintiffs for appealing and not mentioning to the District Court that the bankruptcy court should not have issued its Opinion and that there was a motion to withdraw reference to be considered. Of course, simultaneously, the bankruptcy court, upon argument of Highland (not raised it its Objection), seemingly concludes that this Court resolved the initial motion to withdraw reference through the Order of Reference.

are three fundamental flaws with this analysis: (i) the law is decidedly *not* as the bankruptcy court construed it, (ii) by enforcing the Standing Order of Reference, the district court did not rule on whether 28 U.S.C. § 157(d) applies to this Civil Action, and certainly does not appear to have ruled that it does not (in simply ordering the reference to be enforced, because this Civil Action is related to the Highland Bankruptcy Case), and (iii) allegedly "premature" motions to withdraw the reference are not dispositive of a party's right to later re-urge withdrawal of the reference.

### 1.   The Motion Was Not Untimely Under the Circumstances

**31.**     The motion here was filed within days of the Civil Action being filed in district court and re-urged once it the substantive issues were before the bankruptcy court. Here, when Highland filed the Renewed Motion to Dismiss after remand, it again became evident that absent withdrawal of the reference, the bankruptcy court would necessarily have to rule on the merits of the federal claims and thus, be required to substantially and materially consider the Advisers Act.

**32.**     The annals of case law are ripe with courts granting motions for withdrawal of the reference as "timely" filed under circumstances where the cases were far further along than this one. *See, e.g., Chatz v. World Wide Wagering*, No. 17 C 4229, 2018 U.S. Dist. LEXIS 240552, at *9 (N.D. Ill. 2018) (holding that motion to withdraw not untimely when filed after decision on motion to dismiss); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2012 U.S. Dist. LEXIS 92230, at *24 (S.D.N.Y. 2012) (motion filed after decision on motion to dismiss and after five month delay not untimely); *Pilipovic v. Rice (In re Pilipovic)*, No. 4:15-CV-00861, 2015 U.S. Dist. LEXIS 155741, at *5 (E.D. Mo. 2015) (finding movants motion for withdrawal was timely when filed two weeks after bankruptcy court ruled on motion to dismiss); *In re U.S.A. Floral Products, Inc.*, No. 01-1230, 2005 WL 3657096, at *1 (D. Del. July 1, 2005) ("While Defendants had notice of the grounds for the motion as early as June 2003, it would have been imprudent to

11

file until the Bankruptcy Court denied Defendants' motion to dismiss.") (internal quotation marks and citation omitted); *Schlein v. Golub (In re Schlein)*, 188 B.R. 13, 15 (E.D. Pa. 1995) (motion to withdraw not untimely when filed after bankruptcy court's decision on motion to dismiss and after discovery commenced); *In re Sevko, Inc.*, 143 B.R. 114, *5-6 (N.D. Ill. 1992) (finding a motion to withdraw reference timely when filed five months after creditor had notice of the grounds to withdraw, as it would have been "imprudent" to file motion before denial of debtor's motion to dismiss); *Burger King Corp. v. B-K of Kan., Inc.*, 64 B.R. 728, 730 (D. Kan. 1986) (holding that motion to withdraw was timely when made ten months after case started and after discovery started); *Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397, 402 (S.D.N.Y. 1986) (§ 157(d) motion filed one year after case commenced, after decision on motion to dismiss and after discovery commenced not untimely); *Mich. Milk Producers Asso. v. Hunter*, 46 B.R. 214, 215 (N.D. Ohio 1985) (§ 157(d) timely when filed 11 days before trial despite movant's awareness of federal claim a year earlier).

33.      Congress included a timeliness requirement in § 157(d) in order "to avoid unnecessary delays and costs [so] that the 'withdrawal provision [c]ould not be allowed to be used by any party for the purpose of delay.'" *United States v. Kaplan*, 146 B.R. 500, 503 (D. Mass. 1992) (citation omitted). Timeliness has thus generally been found to be a question of prejudice. *See, e.g., Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2012 U.S. Dist. LEXIS 92230, at *24 (S.D.N.Y. 2012) ("Given the importance of litigants' right to resolution of substantial non-bankruptcy issues by an Article III court, a court must refrain from denying a motion for mandatory withdrawal as untimely unless the delay creates some comparable hardship for the other party or the courts hearing the case."); *In re Enron Creditors Recovery Corp.*, 410 B.R. 374, 381 n.9 (S.D.N.Y. 2008) (noting importance of determining prejudice when deciding timeliness);

*Interconnect,* 59 B.R. at 402 (finding motion timely where no prejudice inured).

**34.**     Here, Highland has identified no prejudice whatsoever. Discovery has not even been allowed to commence and the bankruptcy court has not ruled on the merits—indeed, the court prudently stayed ruling on the merits of the Renewed Motion to Dismiss until the question of mandatory withdrawal of the reference could be resolved. Therefore, there is simply no basis to find that the motion is not "timely."

### 2. Enforcing the Standing Order of Reference Was Not a Ruling on Whether Mandatory Withdrawal of the Reference Applies.

**35.**     According to the Standing Order of Reference, if the proceeding relates to "a case under Title 11 which were pending in the Bankruptcy Court of Northern District of Texas … which may be filed [in this district] hereafter" then the proceeding must "… be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law." *See* Standing Order of Reference.

**36.**     Therefore, according to the Standing Order of Reference, if the Complaint relates to the Highland Bankruptcy Case, then the Standing Order of Reference applies. In filing the Motion to Enforce the Reference, Highland argued to the district court that the Complaint relates to the Highland Bankruptcy Case. In response, the Plaintiffs raised the novel argument that even if that were true, the district court should nonetheless not apply the Standing Order of Reference because eventually mandatory withdrawal would apply.

**37.**     Highland urged the district court to reject this argument and apply the Standing Order of Reference, in part, because mandatory withdrawal did not apply, but also because the district court would benefit from "**the Bankruptcy Court's recommendation on mandatory withdrawal as required by the local rules, which require a party to file a motion for withdrawal with the bankruptcy clerk so the bankruptcy court can make a report and**

**recommendation to this Court**." APP_150, ¶ 18 (emphasis supplied).[6]

38.     After receiving this briefing, the district court entered the Order of Reference which solely referenced 28 U.S.C. § 157 generically (no subsection whatsoever) and the Standing Order of Reference. APP_153.  A plain reading of the Order of Reference is that the district court merely enforced the Standing Order of Reference, which **only** required a finding that the Complaint related to the Highland Bankruptcy Case.

39.     To be sure, Plaintiffs do not contend that the Order of Reference was wrongly issued but suggest that the it did not adjudicate the question whether the reference should be withdrawn (mandatorily) under 28 U.S.C. § 157(d). The Order of Reference contained no discussion or mention of whether mandatory withdrawal of reference applied to the Civil Action. Thus, there is no basis to infer that the district court ruled on mandatory withdrawal of reference.

40.     That this Court did not decide the question of mandatory withdrawal is supported by a simple logical postulate: A reference that has not been enforced cannot be withdrawn. Therefore, the mere act of enforcing the reference cannot be the predicate for concluding that it resolved the issue of mandatory withdrawal of the reference. Further, as a matter of law, enforcement of the Standing Order of Reference is not predicated upon a finding that 28 U.S.C. § 157(d) does not apply. Therefore, the conclusion that this Court has already ruled on and denied the withdrawal of the reference question appears to be an incorrect one.

41.     Rather, this Court did exactly what Highland urged it to do: leave it to the bankruptcy court in the first instance to provide a report and recommendation pursuant to Local

---

[6] As a corollary to this, undersigned notes that there was no consent to proceed before the bankruptcy court—consent must be explicit and not merely implied. *Accord Interconnect Tel. Servs., Inc.*, 59 B.R. 397, 401-02 (S.D.N.Y. 1986) (citing Norton and Colliers on Bankruptcy).

14

Bankruptcy Rule 5011-1. And in fact, at the November 23 Hearing, as shown above, the bankruptcy court clearly announced that the withdrawal issue was not only live, but that withdrawal was proper—going so far as to declare that its ruling would be a report and recommendation to the district court, and that it was essentially acting as a magistrate for the district court. These facts cannot be squared with the premise that this Court denied the withdrawal motion.

42.     In its "Second Bite at the Apple" thesis, the bankruptcy court is, in fact, excoriating *Plaintiffs* for not clearing up the confusion, or seeking to have the bankruptcy court explain itself with respect to on the one hand it cloaking itself as a magistrate to issue a report and recommendation, and on the other hand, changing stripes to issue its Opinion, that purported to be a judgment (though, technically, it was not, for failure to conform to FED. R. CIV. P. 54(a)).[7]

43.     While the bankruptcy court is correct—Plaintiffs did not mention withdrawal of the reference in their appeal briefing—that beggars two fundamental issues: (1) the bankruptcy court had already stated it was sitting as a magistrate judge, but then issued no order reversing that statement to appeal as to whether the reference was withdrawn, and there is no procedural mechanism to appeal a non-order, and (2) the bankruptcy court's decision would not have facially merited withdrawal of the reference: it was not predicated on a substantial and material consideration of federal statutory law—those issues were avoided. And therefore, any attempt to withdraw the reference, given the issues being decided, would have been deemed either moot or

---

[7] Granted, Plaintiffs treated the Opinion essentially as a final judgment to be on the safe side. And, regardless, whether they should have the challenged the bankruptcy court for its "magistrate on the one hand" and "adjudicating judge" on the other should not be considered by this Court as a knowing waiver of rights because of the shifting target occasioned by the bankruptcy court's conflicting messaging. To do so would be inequitable.

premature.

44.     Thus, while Defendant and the bankruptcy court appear to complain that Plaintiffs did not raise the issue of withdrawal of the reference during the appeal of the first Order on the Motion to Dismiss, they have not backed this complaint up with any legal or factual substance. There was little no means or basis to raise the issue.

### 3. Subsequent Motions to Withdraw the Reference May Be Required if Circumstances Change in a Case.

45.     The bankruptcy court held that the Renewed Motion to Withdraw was really a "second bite" at mandatory withdrawal of the reference and, therefore, a "second" motion to withdraw the reference. This finding and conclusion is wrong.

46.     Underlying the bankruptcy court's position is that perhaps the original motion to withdraw was premature if it was filed before the reference was even enforced by this Court. But even prematurely filed motions to withdraw the reference do not preclude subsequently filed motions. *See In re Reed*, No. CV 17-908, 2017 WL 1788295, at *2 (E.D. La. May 5, 2017) (holding that motions to withdraw filed prior to time for jury trial may be deemed premature, but that premature motions can be re-urged once trial is more certain).[8]

47.     A motion to withdraw the reference is timely after it becomes apparent that adjudication of the matter will *necessarily* turn on the substantial and material consideration of federal statutes other than Bankruptcy Code. *See U.S. Gypsum v. National Gypsum*, 145 B.R. 539, 542 (N.D. Tex. 1992). There, Judge Fish considered whether the motion to withdraw was timely, and explained:

---

[8] Plaintiffs cannot address the bankruptcy court's explanation as it has given none. But is reasonable to conclude that because the substantive law was not in any way at issue in the Opinion, the bankruptcy court determined it had authority to issue the Opinion.

16

> This court agrees with U.S. Gypsum that its motion for mandatory withdrawal of the reference would have been premature until National Gypsum filed its objection on October 10, 1991. Once National Gypsum's objection was filed, U.S. Gypsum filed its motion for withdrawal 33 days later, i.e., on November 12, 1991. Under these circumstances, the motion to withdraw the reference was timely.

*Id.*

48.     Here, now that the estoppel bases for dismissal have been eliminated and the decision on the Renewed Motion to Dismiss *necessarily* turns on the Advisers Act, one cannot say that the Reurged Motion to Withdraw is untimely. *Sibarium v. NCNB Texas Nat. Bank*, 107 B.R. 108, 111 (N.D. Tex. 1989) (cautioning that mandatory withdrawal should not be based on "speculation about issues which may or may not arise and may or may not be germane to resolution of the proceeding").

49.     Plaintiffs made a timely request for mandatory withdrawal of reference under 28 U.S.C. § 157(d). Their decision to appeal the Opinion, which dealt not at all with the issues underlying the mandatory withdrawal analysis, should not be held against them given that that was a necessary predicate to eliminating the non-federal statutory bases for decision. Given that now, for the first time, Plaintiffs are faced with an attack on the Complaint focused solely upon the substantive federal law, 28 U.S.C. § 157(d) is necessarily implicated.

## C. AN ADJUDICATION OF THE RENEWED MOTION TO DISMISS REQUIRES CONSIDERATION OF SUBSTANTIAL AND MATERIAL QUESTIONS ARISING UNDER FEDERAL STATUTES.

50.     Mandatory withdrawal under 28 U.S.C. § 157(d) arises where "'substantial and material consideration' of federal statutes other than the Bankruptcy Code is 'necessary' to the resolution of a case or proceeding" and requires more than a mere "straightforward application of federal law to the facts." *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (citations omitted). While the bankruptcy court spends much time on the allegedly core nature of the

proceeding, the Report and Recommendation barely analyzes the claims set forth in the Complaint and the interplay of the federal securities laws—here, the Advisers Act.

51.    The bankruptcy court contends that because fiduciary duties are not outside of a bankruptcy court's expertise and bankruptcy courts frequently consider other federal statutes in adjudicating claims against the estate, then (in conjunction with it being a core proceeding, which as set forth herein is irrelevant), 28 U.S.C. § 157(d) cannot apply. But this attempt to claim that the case has nothing more to do than apply common law fiduciary duties is a non-starter and ignores the fact that securities laws and regulations passed by the SEC are at the center of this case.

52.    Courts have rejected the same argument raised here where the fiduciary duty arises under federal law. *See, e.g., Laborers' Pension Trust Fund-Detroit and Vicinity v. Kiefer (In re Kiefer),* 276 B.R. 196 (E.D. Mich. 2002) (withdrawal by district court of reference to bankruptcy court was warranted, where disputed issues necessary to resolution of case required determination of debtor's fiduciary duties ERISA, and whether debtor violated that fiduciary duty). Here, federal law under the Advisers Act supplies the fiduciary duty standard. *See Transamerica Mortg. Advisors (tama) v. Lewis*, 444 U.S. 11, 17 (1979) ("As we have previously recognized, § 206 [of the Advisers Act] establishes 'federal fiduciary standards' to govern the conduct of investment advisers.").

53.    The purpose of 28 U.S.C. § 157(d)'s mandatory withdrawal provision is to ensure that "the assertion of a federally created right will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and is better equipped to determine them than are bankruptcy judges." *Murray v. Warren County Sheriff's Dept. (In re Avtex Fibers-Font Royal, Inc.),* No. 90-20290 T, 1991 WL 25460, at *2 (E.D. Pa. Feb. 26, 1991). Therefore, courts have understandably been

reluctant to withdraw the reference where the consideration of federal law would only have a hypothetical, indirect or collateral impact. *Cf. In re Ionosphere Clubs*, 922 F.2d 984, 995 (2d Cir. 1990) (holding that questions of federal collective bargaining law as defense to claims did not warrant application of mandatory withdrawal of the reference).

54.     The bankruptcy court cited no case finding that mandatory withdrawal was not required where federal securities laws were at issue. And the cases cited by Highland did not involve circumstances where a federal right was at stake—rather, they tended to involve only incidental considerations of federal statues—i.e., circumstances where the statute might affect, but was not "necessary" to the decision.

55.     But the legislative history of 28 U.S.C. § 157(d) reflects the fact that mandatory withdrawal was intended to apply litigation of rights under the securities laws. *See* 130 CONG. REC. 6244 (1984). *See also In re Contemp. Lithographers, Inc.*, 127 B.R. 122, 125 (M.D.N.C. 1991) ("if federal regulations determine the outcome of a dispute, as would standards for liability set by the Securities and Exchange Commission for acts of insider trading in a securities fraud suit, then the mandatory withdrawal provision would apply") (citation omitted).

56.     And while courts have indeed held that the routine application of well-established legal principles is not a basis for mandatory withdrawal of the reference, no court cited by the bankruptcy court or the debtor has found that deciding the alleged violation of the securities laws involved the mere routine application of federal law. The contrary is true.

57.     No one would say that the securities laws—now almost 100 years old—are not well established—yet, case after case has refused to reject withdrawal of the reference in a securities case on the basis that it involved a straightforward application of law to fact—the cases repeatedly find that resolving securities disputes always involves substantial consideration of those laws

warranting withdrawal of the reference. *See, e.g., Haigler v. Dozier (In re Dozier Fin., Inc.)*, No. 4:18-cv-1888-AMQ-SVH, 2018 U.S. Dist. LEXIS 220354, at *5-6 (D.S.C. 2018) (liability under securities laws for selling unregistered securities); *In re Contemp. Lithographers, Inc.*, 127 B.R. at 127; *In re Am. Solar King Corp.*, 92 B.R. 207, 210-11 (W.D. Tex. 1988) (holding that claim under Rule 10b-5 triggered mandatory withdrawal) (citing Weintraub and Resnick, *Bankruptcy Law Manual,* 6-15 (rev. ed. 1986) ("a claim which is based on federal securities statutes 'must be heard by the district court if any party so requests'")); *Price v. Craddock*, 85 B.R. 570, 573 (D. Colo. 1988) (securities regulations and Rule 10-b-5 supplied standard of conduct for defendant and therefore, material and substantial considerations of those statutes and regulations warranted mandatory withdrawal of the reference); *In re Bevill, Bresler & Schulman Asset Management Corp.*, 67 Bankr. 557, 563 (D. N.J. 1986), *aff'd*, 805 F.2d 120 (3d Cir. 1986) (mandatory withdrawal of reference where application of securities exchange act laws governing receivership at issue).

58.     All of these cases noted that applying the securities laws to the facts met the standard under § 157. And the undersigned could find no case involving the securities law where withdrawal of the reference was denied. The above-cited cases all dealt with "well established" securities laws—certainly more established and visible in the case law than the Advisers Act— and whose general premises were not in dispute, but nonetheless reflect the reality that the securities laws regulate complex interstate behavior that is not reducible to rote deductive premises and conclusions. *Accord id; In re Dozier Fin., Inc*, 2018 U.S. Dist. LEXIS 220354, at *12 (citing *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vac'd on other grounds*, 625 F.2d 49 (5th Cir. 1980) ("[A] securities case, by its very nature, is a complex animal.")) and *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1426 (D.S.C. 1990) (finding securities

cases are "notably difficult and notoriously uncertain")).

59.     The above conclusion mirrors decisions involving other long-existing and well-established federal statutes such as the Interstate Commerce Act, the antitrust laws, RICO, the patent laws, etc.—that nonetheless warranted withdrawal of the reference. Notwithstanding the fact that the laws are well established, it was the fact that those laws were central to deciding the case and application of the law to the facts was complex that carried the day. *See, e.g., In re Nat'l Gypsum Co.*, 145 B.R. at 542 (holding that withdrawal proper because consideration of well-established antitrust and patent law involves deciding whether the evidence constitutes evidence of infringement and therefore involves substantial and material consideration of the law); *Am. Freight Sys. v. ICC (In re Am. Freight Sys.)*, 150 B.R. 790, 795 (D. Kan. 1993) (holding that application of established "filed rate doctrine" under the Interstate Commerce Act required substantial and material consideration of federal law); *In re Electro-Mechanical Indus.*, No. 07-36393, 2008 Bankr. LEXIS 5177, at *8-9 (Bankr. S.D. Tex. 2008) (recommending withdrawal to consider patent law matter because patent law requires consideration of highly technical facts to which Title 35 is to be applied); *Schlein v. Golub (In re Schlein)*, 188 B.R. 13, 14 (E.D. Pa. 1995) (withdrawal proper because "the court will be called upon to determine whether the acts complained of constitute RICO violations and whether the elements of a RICO violation have been satisfied in each instance"); *Burger King Corporation v. B-K of Kansas, Inc.*, 64 Bankr. 728 (D. Kan. 1986) (consideration of well-established trademark infringement law, as well as antitrust and civil RICO claims, warranted withdrawal of the reference because it involved substantial consideration of those federal laws); *In re Hartley,* 55 B.R. 781, 784 (N.D. Ohio 1985) ("The Trustee's allegation that the defendant violated the [RICO Act] makes it a necessity that the court determine whether the defendants' activities were those prohibited by 18 U.S.C. § 1961-1968.

21

There is no question this case is the type provided for by the second sentence of section 157 which requires mandatory withdrawal by the District Court."). None of these cases—or their analogues—found that the laws were unsettled or that there were open questions of law.

60.     Here, there is no doubt that resolution of this case requires substantial and material consideration of the Advisers Act of 1940. The bankruptcy court incorrectly contends that the standard for mandatory withdrawal is only met where resolution of "significant open and unresolved issues of non-Title 11 law". But that misreads the cases cited. The case law indeed has found that mandatory withdrawal is appropriate where there are unresolved and open questions of federal law, but that is the high-water mark. It is not the litmus test as the litany of cases cited above illustrate. Here, the bankruptcy court did not even pause to consider the open and unresolved issues regarding the interpretation of the Advisers Act identified by Highland itself and argued by the Plaintiffs: the viability of an action for breach of fiduciary duties imposed by the Adviser Act § 215. *See* Dkt. 129 at 12-13 & n.3; Dkt. No. 144 at p.4.

61.     Indeed, this involves more consideration than what meets the eye. For one thing, Highland CLO Fund Ltd. has challenged the scope of the private right of action under § 215 of the Advisers Act in *NexPoint Diversified Real Estate Fund v. Acis Capital Management et al.*, Case 1:21-cv-04384 (S.D.N.Y 2022). That matter is now up on appeal before the Second Circuit. *See NexPoint Diversified Real Estate Fund v. Acis Capital Management et al.*, 21-cv-4384 (2d Cir.).

62.     The district court will also have to decide whether a direct duty under 15 U.S.C. § 10b-6(4) and SEC Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8] exists between Highland and the Fund and also with CLO Holdco as an investor in Highland CLO Fund, Ltd. Highland has already challenged this, citing *Goldstein v. SEC*, 451 F.3d 873, 874 (2006) for the premise that there is no direct duty to an investor because the investor is not a direct client of Highland's. Similar disputes

over the Advisers Act have already arisen here given the degree to which Plaintiffs and Defendant disagree over the scope and reach of the Advisers Act, whether and how it applies to Highland's alleged actions and statements. For example, Seery's testimony before the bankruptcy court is at issue, and whether it violated duties arising under the Advisers Act is a key question.

63.     Thus, the construction of the Advisers Act's use of the term "investor and client" will be material and substantial here as well. This is to say nothing of the ordinary complexities attendant to securities act claims involving the Advisers Act treatment of inside information, duties of Highland to give truthful information and disclosure, and its statutory and code duties to not engage in schemes that manipulate or defraud investors and clients. Whether the alleged facts constitute violations of the Advisers Act thus are far from straightforward applications of law to evidence.

64.     And while not addressed or considered in the Report and Recommendation, Highland argues that there is no basis for 28 U.S.C. § 157(d) because the Plaintiffs are wrong on the merits on their interpretation of the Advisers Act. But courts do not evaluate the merits of the parties' positions to determine whether withdrawal is mandatory. *Stearns Sec. Corp*., 2001 WL 840187 at *4. Rather, it is sufficient that "resolution of this matter will require substantial and material consideration of federal law outside the Bankruptcy Code." *Id*. at *3. Although mandatory withdrawal does not require matters of first impression be involved, where they are, "the burden of establishing a right to mandatory withdrawal is more easily met." *Id*. (citing *Picard v. JPMorgan Chase & Co., et al*., 454 B.R. 307, 312 (S.D.N.Y.2011) (quotation marks omitted).

65.     Here, the Plaintiffs have identified several substantial and unresolved issues under the Advisers Act. This is precisely the type of issue that 28 U.S.C. § 157(d)  applies, and withdrawal is mandatory.

## CONCLUSION

66.     The Plaintiffs timely filed the Renewed Motion to Withdraw at the moment when it became more than speculative that adjudication of this matter would turn upon a substantial and unresolved interpretation of the Advisers Act. Before that time, a motion to withdraw the reference would have been premature and could only have been based on speculation that the merits of the Advisers Act claims would be reached. Now, it is clear that they will be, and therefore, mandatory withdrawal required. Not only is the bankruptcy court's interpretation of timeliness misguided but the bankruptcy court did not even attempt to parse through the actual substantial and open issues advanced by the Plaintiffs under the Advisors Act. Instead, the bankruptcy court focused on the core nature of the proceeding which is wholly irrelevant under 28 U.S.C. § 157(d). As set forth herein, the Renewed Motion to Withdraw was timely and this matter of the type that 28 U.S.C. § 157(d) applies.

Dated: February 21, 2023                              Respectfully submitted,

                                                      **SBAITI & COMPANY PLLC**

                                                      */s/ Mazin A. Sbaiti*
                                                      Mazin A. Sbaiti
                                                      Texas Bar No. 24058096
                                                      Jonathan Bridges
                                                      Texas Bar No. 24028835
                                                      JPMorgan Chase Tower
                                                      2200 Ross Avenue – Suite 4900W
                                                      Dallas, TX 75201
                                                      T: (214) 432-2899
                                                      F: (214) 853-4367
                                                      E: mas@sbaitilaw.com
                                                      jeb@sbaitilaw.com

                                                      ***Counsel for Plaintiffs***

24

and

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**

Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

*Special Purpose for Plaintiffs for Withdrawal of Reference Motion*

25