PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CHARITABLE DAF FUND, L.P., AND CLO HOLDCO, LTD. | § § § § | |
| | § | Adv. Proc. No. 21-03067-sgj |
| Plaintiffs, | § § | |
| vs. | § § | Case No. 3:22-cv-02802-S |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING, LTD. | § § § § | |
| Defendants. | § § | |

## BRIEF IN RESPONSE TO OBJECTION TO THE BANKRUPTCY COURT REPORT AND RECOMMENDATION TO THE DISTRICT COURT ON "RENEWED" MOTION TO WITHDRAW THE REFERENCE [BANKR. DOC. NO. 128]

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    RELEVANT BACKGROUND .................................................................... 3

III.   ARGUMENT ............................................................................................. 11

     A.     The Motion to Withdraw the Reference Was Untimely ...................................... 11

     B.     The Renewed MTD Does Not Require Mandatory Withdrawal ........................ 15

             i.     The Complaint Does Not Require Consideration of Unsettled Law ............................................................................ 17

             ii.    Plaintiffs Cite No Applicable Case Law ...................................... 19

IV.   CONCLUSION ......................................................................................... 23

DOCS_NY:47155.8 36027/003

## TABLE OF AUTHORITIES

**CASES**

*Am. Freight Sys. v. ICC (In re Am. Freight Sys.)*,
 150 B.R. 790, 794-95 (D. Kan. 1993) ................................................... 20

*Burch v. Bank of Am. N.A.*,
 2020 U.S. Dist. LEXIS 85100 (N.D. Tex. Jan. 6, 2020) ........................ 16

*Burger King Corp. v. B-K of Kan., Inc.*,
 64 B.R. 728 (D. Kan. 1986) ................................................................... 20

*Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*,
 485 B.R. 604 (Bankr. W.D. Wash. 2013) .............................................. 23

*Charitable DAF Fund LP v. Highland Cap. Mgmt., L.P.*,
 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022) ............ passim

*City Bank v. Compass Bank*,
 2011 U.S. Dist. LEXIS 129654 (W.D. Tex. Nov. 9, 2011) ..................... 13

*City of N.Y. v. Exxon Corp.*,
 932 F.2d 1020 (2d Cir. 1991) ................................................................ 16

*Corwin v. Marney, Orton Inv.*,
 788 F.2d 1063 (5th Cir. 1986) ............................................................... 19

*Drew v. WorldCom, Inc.*,
 2006 U.S. Dist. LEXIS 52318 (S.D.N.Y. July 26, 2006) ....................... 12

*Dugaboy Inv. Tr. v. Highland Cap Mgmt., L.P.*,
 2022 U.S. Dist. LEXIS 172351 (N.D. Tex. Sept. 22, 2022) ................... 18

*Goldstein v. SEC*,
 451 F.3d 873 (D.C. Cir. 2006) ......................................................... 17, 18

*Haigler v. Dozier (In re Dozier Fin., Inc.)*,
 2018 U.S. Dist. LEXIS 220354 (D.S.C. Sept. 6, 2018) ......................... 20

*Holzhueter v. Groth (In re Holzhueter)*,
 571 B.R. 812 (Bankr. W.D. Wis. 2017) ................................................. 22

*Hupp v. Educ. Credit Mgmt. Corp.*,
 2007 U.S. Dist. LEXIS 68199 (S.D. Cal. Sept. 13, 2007) ..................... 12

*In re Acis Cap. Mgmt., L.P.*,
 Case No. 18-30264-sgj11 (Bankr. N.D. Tex. 2019) ........................ 22, 23

*In re Am. Solar King*,
 92 B.R. 207 (W.D. Tex. 1988) ............................................................... 20

*In re Contemporary Lithographers, Inc.*,
 127 B.R. 122 (M.D.N.C. 1991) ............................................................. 20

*In re Electro-Mechanical Indus.*,
2008 Bankr. LEXIS 5177 (Bankr. S.D. Tex. Feb. 20, 2008).................................. 21

*In re Fresh Approach, Inc.*,
51 B.R. 412 (Bankr. N.D. Tex. 1985).............................................................. 11, 12

*In re Hartley*,
55 B.R. 781 (N.D. Ohio 1985)........................................................................... 20

*In re Highland Cap. Mgmt., L.P.*,
2021 Bankr. LEXIS 2074 (Bankr. N.D. Tex. Aug. 3, 2021),
*aff'd* 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022) ........................... 4

*In re Nat'l Gypsum Co.*,
145 B.R. 539 (N.D. Tex. 1992) ..................................................................... 16, 21

*In re New York Trap Rock Corp.*,
158 BR 574 (S.D.N.Y. 1993)............................................................................. 12

*In re Rickel & Assoc., Inc.*,
2003 U.S. Dist. LEXIS 23136 (S.D.N.Y. Dec. 24, 2003) ...................................... 12

*In re Vicars Ins. Agency, Inc.*,
96 F.3d 949 (7th Cir. 1996) ............................................................................... 16

*King v. Skolness (In re King)*,
624 B.R. 259 (Bankr. N.D. Ga. 2020) ................................................................ 22

*Laborers' Pension Tr. Fund-Detroit & Vicinity v. Kiefer (In re Kiefer)*,
276 B.R. 196 (E.D. Mich. 2002)........................................................................ 20

*Laird v. Integrated Res., Inc.*,
897 F.2d 826 (5th Cir. 1990) ............................................................................. 18

*Living Benefits Asset Mgmt. v. Kestrel Aircraft Co. (In re Living Benefits Asset Mgmt.)*,
587 B.R. 311 (N.D. Tex. 2018), *aff'd* 916 F.3d 528 (5th Cir. 2019)........................ 23

*Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*,
2009 U.S. Dist. LEXIS 102134 (N.D. Tex. Oct. 1, 2009),
*aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009) ............................. 17

*Murray v. Warren Cnty. Sheriff's Dept. (In re Avex, Fibers-Front Royal, Inc.)*,
1991 U.S. Dist. LEXIS 2273, 1991 WL 25460 (E.D. Pa. Feb. 25, 1991) ................ 20

*NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt., L.P.*,
48 F.4th 419 (5th Cir. 2022) ............................................................................. 21

*NexPoint Advisors, L.P., v. Highland Cap. Mgmt., L.P.*,
48 F.4th 419 (5th Cir. 2022) ............................................................................... 4

*NexPoint Diversified Real Es. Tr. v. Acis Cap. Mgmt., L.P.*,
2022 U.S. Dist. LEXIS 142029 (S.D.N.Y. Aug. 9, 2022)................................. 19, 21

*Price v. Craddock*,
85 B.R. 570 (D. Colo. 1988)............................................................................. 20

iii

*Robare Grp., Ltd. v. SEC,*
    992 F.3d 468 (D.C. Cir. 2019) ................................................................ 18

*S. Pac. Transp. v. Voluntary Purchasing Grps.,*
    252 B.R. 373 (E.D. Tex. 2000) ................................................................ 16

*Schlein v. Golub (In re Schlein),*
    188 B.R. 13 (E.D. Pa. 1995) ................................................................... 20

*SEC v. Cap. Gains Rsch. Bureau, Inc.,*
    375 U.S. 180 (1963) ................................................................................ 18

*SEC v. Northshore Asset Mgmt.,*
    2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008) ........................ 17

*SEC v. Trabulse,*
    526 F. Supp. 2d 1008 (N.D. Cal. 2007) ................................................. 18

*Sec. Farms v. Int'l Bhd. of Teamsters,*
    124 F.3d 999 (9th Cir. 1997) .................................................................. 11

*Tex. United Hous. Program, Inc. v. Wolverine Mortg. Partner Ret.,*
    2017 U.S. Dist. LEXIS 140992 (N.D. Tex. Jul. 18, 2017) ..................... 16

*Tillman Enters., LLC v. Horlbeck (In re Horlbeck),*
    589 B.R. 818 (Bankr. N.D. Ill. 2018) .................................................... 22

*Tradex Glob. Master Fund SPC, Ltd. v. Pui-Yun Chui (In re Pui-Yun Chui),*
    538 B.R. 793 (Bankr. N.D. Cal. 2015) ................................................... 22

*Transamerica Mortg. Advisors v. Lewis,*
    444 U.S. 11 (1979) .................................................................................. 19

**STATUTES**

11 U.S.C. § 523 ............................................................................................ 22, 23

28 U.S.C § 157 ............................................................................................. passim

**OTHER AUTHORITIES**

9 COLLIER ON BANKRUPTCY ¶ 5011.01[2] .................................................... 12

iv

Highland Capital Management, L.P. ("Highland" or "Defendant"), the defendant in the above-captioned proceeding (the "Action"), files this brief pursuant to Federal Rule of Bankruptcy Procedure 9033(b) ("Rule 9033(b)") in support of its response (the "Response")[1] to the *Objection to Bankruptcy Court Report and Recommendation to the District Court on "Renewed" Motion to Withdraw the Reference [Bankr. Doc. No. 128]* [D.I. 3] (the "Objection") filed by plaintiff The Charitable DAF Fund, L.P. ("DAF") and plaintiff CLO Holdco, Ltd. ("CLOH," and together with DAF, the "Plaintiffs"). In support of its Response, Highland states as follows.

## I.    PRELIMINARY STATEMENT[2]

1.      The Objection represents another attempt by Plaintiffs to forum shop and delay adjudication of this matter. In erecting and then attacking a strawman—tossed together to avoid a reckoning—Plaintiffs misstate and hide critical facts and distort the law. The Bankruptcy Court saw through Plaintiffs' obfuscations and correctly recommended that the reference *not* be withdrawn. For the reasons set forth below, (a) Plaintiffs' Objection should be overruled, (b) the Bankruptcy Court's Report should be adopted *in toto*, and (c) the Bankruptcy Court's decision on Highland's Renewed MTD should be deemed a "final order" whenever it issues—it is *sub judice*, having been fully briefed and argued in January 2023.

2.      On April 12, 2021, Plaintiffs commenced this Action in this Court by filing their Complaint. After Highland moved to enforce the reference, Plaintiffs argued in their response (which they styled a "cross-motion") that mandatory withdrawal was required under 28 U.S.C § 157(d) and that enforcing the reference would therefore be pointless. On September 29, 2021, after

---

[1] Highland is concurrently filing its *Appendix in Support of Its Response to Objection to the Bankruptcy Court Report and Recommendation to the District Court on "Renewed" Motion to Withdraw the Reference [Bankr. Doc. No. 128]* (the "Appendix"). Citations to the Appendix are notated as "Ex. #, Appx. #."

[2] All capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

considering Plaintiffs' response, this Court enforced the reference and sent this matter to the Bankruptcy Court.

3.      In November 2021—after briefing on the merits of Plaintiffs' federal claims was complete—Plaintiffs told the Bankruptcy Court that they would file a motion for mandatory withdrawal of the reference if their motion for a stay were denied. Yet, after their stay motion was denied, Plaintiffs, again, did not move to withdraw the reference but instead proceeded in the Bankruptcy Court and argued the merits of Highland's Original MTD—including the merits of federal claims that Plaintiffs now contend should not be decided by a bankruptcy judge.

4.      After the argument on the merits, Plaintiffs waited a full year—until November 2022—before filing their "renewed" Motion for mandatory withdrawal. By then, (a) the Bankruptcy Court had issued a final order on the Original MTD, (b) this Court decided Plaintiffs' appeal of the MTD Order and remanded the Action back to the Bankruptcy Court, and (c) Highland filed its Renewed MTD (which has now been fully briefed and argued by both sides).

5.      Under these circumstances, the Motion is clearly untimely and prejudicial and represents (another) attempt at forum shopping. To dodge this obvious result, Plaintiffs contend that withdrawal of the reference was not "ripe" until seventeen months after this case was filed and that somehow the Bankruptcy Court and Highland misled Plaintiffs into believing the MTD Order was a report and recommendation rather than the final order that it was. Plaintiffs' contentions are contradicted by indisputable facts,[3] and nothing in the record excuses their failure to timely move to withdraw the reference. Plaintiffs are solely responsible for the consequences of their own decisions and the continuing waste of judicial and estate resources.

---

[3] Among those facts are that Plaintiffs appealed the MTD Order to this Court rather than filing an objection to proposed findings of fact and conclusions of law pursuant to Rule 9033(b).

6.      The Motion also fails on the merits. The law in this District is clear. Mandatory withdrawal is required only if "significant open and unresolved issues regarding the non-title 11 [federal] law—rather than the mere application of well-settled [federal] law" must be analyzed. *See* ¶ 49 *infra*. Plaintiffs ignore this established body of law and instead apply the wrong standard for mandatory withdrawal, arguing that withdrawal is required so that this Court, rather than the Bankruptcy Court, can apply well-settled law to determine: (a) whether Highland owed Plaintiffs a fiduciary duty under the Advisers Act; (b) the scope of any such duty and whether it was breached; and (c) the remedies and damages for a breach, if any. But these issues are not novel or complicated and can be resolved by straight-forward application of well-settled federal law (including Supreme Court precedent) to a clear set of facts.

7.      Ultimately, the Motion is a waste of judicial and estate resources and should be denied as untimely, prejudicial to Highland and its creditors, and meritless.

## II.      RELEVANT BACKGROUND

8.      On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code").

9.      On February 22, 2021, the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), entered an *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [B.D.I. 1943][4] (the "Confirmation Order"), which confirmed the *Fifth Amended*

---

[4] Citations to "B.D.I. __" refer to entries on the docket maintained in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.). Citations to "A.D.I. __" refer to entries on the docket maintained in Adv. Proc. No. 21-03067-sgj (Bankr. N.D. Tex.).

*Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [B.D.I. 1808] (the "Plan"). The Plan became effective on August 11, 2021 [B.D.I. 2700] (the "Effective Date").[5]

10.     The Plaintiffs in this action are DAF and its wholly-owned subsidiary, CLOH— entities controlled by James Dondero. *Charitable DAF Fund LP v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 175778, at *3 (N.D. Tex. Sept. 28, 2022).

11.     On April 12, 2021, Plaintiffs filed their *Original Complaint* [A.D.I. 1] (the "Complaint") in this Court alleging Highland's Bankruptcy Court-approved settlement with certain HarbourVest entities violated Highland's purported duties to CLOH and DAF. Complaint ¶¶ 56-112.[6] The Complaint asserted five causes of action: breach of fiduciary duty under Rule 206 of the Investment Advisers Act of 1940 (the "Advisers Act") (Count 1); breach of contract (Count 2); negligence (Count 3); RICO (Count 4); and tortious interference with contract (Count 5).

12.     On May 19, 2021, Highland moved for an order enforcing the standing order of reference (Misc. Order No. 33) [A.D.I. 22, 23] (the "Motion to Enforce") arguing that (a) the Complaint "addresse[d] issues that not only arise in, arise under, and relate to Title 11 but which have already been adjudicated by the Bankruptcy Court" and (b) "[n]one of the putative federal causes of action … require 'substantial and material consideration' of a federal statute or more than the cursory application of settled federal law." Motion to Enforce ¶¶ 3, 43.

13.     On May 27, 2021, Highland also moved to dismiss the Complaint [A.D.I. 26] (the "Original MTD"). In its brief in support [A.D.I. 27] (the "MTD Brief"), Highland presented

---

[5] On September 8, 2022, the U.S. Court of Appeals for the Fifth Circuit affirmed, in material part, the Confirmation Order's factual findings and legal conclusions. *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022).

[6] Plaintiffs subsequently sought to add Highland's court-appointed CEO/CRO as a defendant in violation of two Bankruptcy Court orders. Plaintiffs and others were eventually held in contempt for these actions. *In re Highland Cap. Mgmt., L.P.*, 2021 Bankr. LEXIS 2074 (Bankr. N.D. Tex. Aug. 3, 2021), *aff'd* 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022). Plaintiffs appealed to the Fifth Circuit.

4

extensive arguments that *all* of Plaintiffs' claims (including Plaintiffs' federal claims under the Advisers Act and RICO) (a) were barred by *res judicata* and judicial estoppel *and* (b) failed as a matter of law. MTD Brief ¶¶ 26-46.

14.     The Original MTD was fully briefed with *both* sides extensively addressing the merits of whether Plaintiffs' Advisers Act and RICO claims should be dismissed.[7]

15.     On June 29, 2021, Plaintiffs filed their response to the Motion to Enforce [A.D.I. 36] (the "Response"). In the Response, Plaintiffs argued, *inter alia*, that (a) the Motion to Enforce should be denied because the Complaint alleged federal securities law claims that were subject to mandatory withdrawal of the reference under 28 U.S.C. § 157(d) (Response at 1-2, 5-6, 9) and (b) the Bankruptcy Court lacked jurisdiction to hear their claims (*Id.* at 10-14).

16.     On July 31, 2021, Highland filed its reply in support of the Motion to Enforce [A.D.I. 42], arguing that there was no basis for mandatory withdrawal because the Complaint was a simple two-party dispute that did not involve unsettled or novel questions of federal law.[8]

17.     On August 26, 2021, Plaintiffs filed a motion in this Court to stay all proceedings pending appeal of the Confirmation Order [A.D.I. 55] (the "Stay Motion").

18.     On September 20, 2021, after considering the parties' positions (including Plaintiffs' Response), this Court granted the Motion to Enforce [A.D.I. 1] and referred this case to the Bankruptcy Court, including the Original MTD and the Stay Motion, "[p]ursuant to 28 U.S.C. § 157 … to be adjudicated as a matter related to the … Bankruptcy of Highland Capital Management, L.P." (the "Enforcement Order").

---

[7] *See Plaintiffs' Response to Motion to Dismiss Complaint*, A.D.I 38, at 14-23; *see also Debtor's Reply in Support of Motion to Dismiss Complaint*, A.D.I. 45 ¶¶ 14-17. Plaintiffs' insinuations that the Original MTD sought dismissal solely on procedural grounds are false.

[8] In response to Plaintiffs' contention that the Bankruptcy Court lacked jurisdiction, Highland argued that the Complaint asserted "administrative expense" claims in the bankruptcy case that were subject to the Bankruptcy Court's "core" jurisdiction. A.D.I. 42 ¶¶ 3, 17.

19.     Plaintiffs did not seek clarification of the Enforcement Order, file a motion for reconsideration, or appeal. Instead, Plaintiffs and Highland agreed to have the Bankruptcy Court hear the Original MTD and the Stay Motion on November 23, 2021. [A.D.I. 66].

20.     On November 18, 2021, Plaintiffs filed a procedurally improper "amended motion" to stay the proceedings [A.D.I. 69] that attached a draft motion to withdraw the reference [A.D.I. 69-1] (the "Proposed Motion"). The Proposed Motion largely duplicated the arguments for mandatory withdrawal made to this Court in the Response. Plaintiffs indicated they would file the Proposed Motion if the Stay Motion were denied.

21.     On November 23, 2021, the Bankruptcy Court denied the Stay Motion from the bench.[9] Yet, Plaintiffs did not file the Proposed Motion nor did they argue that a motion to withdraw the reference was not "ripe." Instead, on the very same day, Plaintiffs and Highland argued the Original MTD—including whether Plaintiffs' claims under the Advisers Act and RICO should be dismissed *on the merits*—to the Bankruptcy Court. *See, e.g.*, Ex. 1, Appx. 67-70.[10]

22.     At the end of the hearing, the Bankruptcy Court did state it was "acting as a magistrate" and would enter a "report and recommendation" for this Court "to either adopt or not…." *Id.*, Appx. 104. However, on March 11, 2022, the Bankruptcy Court clarified the issue and resolved any conceivable confusion by entering an order granting the Original MTD [A.D.I. 99, 100] (the "MTD Order") and dismissing the Complaint with prejudice. *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022).

---

[9] A formal order denying the Stay Motion was entered on December 7, 2021. B.D.I. 81.

[10] *See also* Report at 8 (finding the parties "argued … the merits of the Original MTD, including their alleged claims under the [Advisers Act] and RICO, to the bankruptcy court" on November 23, 2021).

23.     As Plaintiffs' own conduct and admissions firmly establish,[11] the MTD Order was indisputably a final order which the Bankruptcy Court had authority to enter because it had "core" jurisdiction over the Complaint.[12]

24.     The MTD Order dismissed the Complaint on collateral and judicial estoppel grounds. *Charitable DAF Fund*, 2022 Bankr. LEXIS 659, at *39-40. However, the Bankruptcy Court clearly reviewed all arguments asserted in the Original MTD, including those concerning Plaintiffs' federal claims. *Id.* at *39-40 ("[This Court] will forego addressing the other arguments of Highland [on dismissal of the Advisers Act and RICO claims] …. While this court is inclined to agree with [Highland's] arguments, the court will refrain from addressing them until such time as any higher court may instruct this court to address them.")

25.     Plaintiffs appealed the MTD Order to this Court. Plaintiffs did not style their appeal as an "objection" under Rule 9033—as required when challenging a report and recommendation— nor did they argue that: (a) the Bankruptcy Court was acting as a "magistrate" when it entered the MTD Order; (b) the MTD Order was a report and recommendation subject to *de novo* review pursuant to 28 U.S.C. § 157(c)(1); or (c) the MTD Order was not a final order. Instead, Plaintiffs fully briefed their appeal to this Court.[13]

26.     On September 2, 2022, the District Court decided Plaintiffs' appeal and remanded the Action to the Bankruptcy Court for further proceedings consistent with its *Memorandum*

---

[11] *See* ¶ 46 *infra*.

[12] Indeed, the Bankruptcy Court entered a separate judgment on the Original MTD as required by Federal Rules of Civil Procedure 54 and 58. Consistent with its practice, the Bankruptcy Court entered the MTD Order on the docket twice—once as the opinion and once as the judgment [A.D.I. 99, 100].

[13] In their *Notice of Appeal and Statement of Election*, Plaintiffs described the "judgment, order, or decree appealed from" as being the MTD Order. [A.D.I. 104]. Further, in their *Statement of Issues and Designation of Record on Appeal*, Plaintiffs described the issues to be presented on appeal as being "[w]hether the Bankruptcy Court erred in granting Defendants' Motion to Dismiss the Adversary Proceeding and whether the Court exceeded its authority in reaching the merits." [A.D.I. 111].

*Opinion and Order. Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022).

27.     On October 14, 2022, Highland renewed its motion to dismiss [A.D.I. 122] (the "Renewed MTD"). The Renewed MTD moved to dismiss Counts 2 and 5 on judicial estoppel grounds and *all* counts (including Plaintiffs' federal law claims) on the merits. The Renewed MTD was based on Highland's Original MTD, including its arguments for dismissal of Plaintiffs' federal claims.

28.     On November 18, 2022, Plaintiffs filed their *Renewed Motion to Withdraw the Reference* [A.D.I. 128] (the "Motion"); thirteen minutes later they filed their opposition to the Renewed MTD [A.D.I. 129].[14] The Motion largely reiterated Plaintiffs' arguments regarding mandatory withdrawal of the reference made in the Response and the Proposed Motion. Motion ¶¶ 6-13. Plaintiffs also once again argued the Bankruptcy Court lacked "core" jurisdiction over the Complaint. *Id.* ¶¶ 14-21.

29.     Plaintiffs did not to seek to stay the Renewed MTD to allow the Motion to be adjudicated first.

30.     On December 6, 2022, Highland objected to the Motion [A.D.I. 138, 139] arguing that (a) the Motion was untimely, prejudicial to Highland and its creditors, and constituted forum shopping (A.D.I. ¶¶ 25-27) and (b) adjudication of the Complaint did not require "substantial and material consideration" or "significant interpretation" of federal laws (*id.* ¶¶ 28-35).[15]

---

[14] Thus, Plaintiffs' assertion that they filed the Motion "[w]ell before responding to the [Renewed MTD]" is—to be charitable—an exaggeration. *See* Objection ¶ 20.

[15] Because Plaintiffs again argued that the Bankruptcy Court lacked jurisdiction, Highland again argued that the Complaint asserted administrative expense claims subject to the Bankruptcy Court's "core" jurisdiction. *Id.* ¶¶ 39-41.

31.     On January 25, 2023, the Bankruptcy Court heard oral argument on the merits of both the Motion and the Renewed MTD.[16]

32.     At the hearing, Plaintiffs conceded the Bankruptcy Court had jurisdiction over the Renewed MTD but for the first time argued that whether that jurisdiction was "core" or "non-core" was irrelevant for purposes of 28 U.S.C. § 157(d). In response, the Bankruptcy Court stated that determining whether the Action was "core" or non-core" was necessary to issue a report and recommendation[17]—it is required by the Bankruptcy Court's local rules.[18] Plaintiffs, however, refused to say whether their claims were "core" or "non-core,"[19] thus forcing the Bankruptcy Court to make that determination itself.

33.     Plaintiffs also argued for the first time that this Court had not ruled on their "cross-motion" to withdraw the reference filed in this Court in May 2021 but had instead simply enforced the order of reference—notwithstanding Plaintiffs' arguments on the futility of doing so—and allowed Plaintiffs' "cross-motion" to somehow ride through to be adjudicated by the Bankruptcy Court.[20] Highland did not argue that this Court had "affirmatively" denied Plaintiffs' "cross-

---

[16] The Renewed MTD is sub judice and the parties are awaiting the Bankruptcy Court's order.

[17] Ex. 2, Appx. 115-116 ("THE COURT: Okay. But I want to make sure I have an answer from you because district courts like you to have certain bells and whistles in your reports and recommendations about is it core or non-core or [*Stern*].")

[18] Local Bankruptcy Rules of the U.S. Bankruptcy Court for the Northern District of Texas, Rule 5011-1(a) ("A status conference on the motion [to withdraw the reference] shall be held … [and] the bankruptcy judge shall consider and determine the following … (3) whether the proceeding is core or non-core …. (5) … if the proceeding does not involve a right to jury trial ….")

[19] Ex. 2, Appx. 115-116 Highland argued Plaintiffs' refusal was tactical to allow them to subsequently argue permissive withdrawal of the reference applied. *Id.*, Appx. 144-145.

[20] *Id.*, Appx. 118-119.

motion," but rather that the inference was clear by virtue of the Motion to Enforce having been granted.[21]

34.     On February 6, 2023, the Bankruptcy Court issued its report and recommendation [A.D.I. 1] (the "Report"). The Report recommended denying the Motion:

- as untimely and because it "appears to be forum shopping and an attempt to delay adjudication," having been filed fourteen months after the Enforcement Order, after entry of the MTD Order, and after the MTD Order was remanded back to the Bankruptcy Court following Plaintiffs' appeal (Report at 14);[22] and

- because the Complaint asserted simple breach of fiduciary duty claims that did not require "substantial and material consideration" or "significant interpretation" of federal laws and was not dissimilar to other types of administrative expense claims routinely adjudicated by bankruptcy courts (*id.* at 15-17).

The Bankruptcy Court also found the Motion was a "second bite at the apple" (*id.* at 14) because Plaintiffs were re-asserting arguments initially made to this Court in 2021.[23]

35.     As required by Local Rule 5011-1(a), the Bankruptcy Court held that Plaintiffs' claims were "administrative expense claims" subject to the Court's "core" jurisdiction and that no jury trial right exists. *Id.* at 17.

---

[21] Highland argued that the only "inference" to be drawn from the Enforcement Order was that this Court had reviewed Plaintiffs' arguments on mandatory withdrawal and rejected them. *Id.*, Appx. 144.

[HIGHLAND:] Now did the district court say that this cross-motion, this procedurally improper cross-motion was denied? No, but it enforced the reference notwithstanding plaintiff's arguments that it would aid judicial economy [not to] because the reference would have to be withdrawn. They made the exact same arguments [to the district court] that are being made here today.

The inference is not what [Plaintiffs] said. The inference is that the district court read plaintiffs' papers and said, no, there's no basis for mandatory withdrawal, let's send it to the bankruptcy court where it should have been filed in the first instance.

The Bankruptcy Court agreed with Highland's assessment. *Id.*, Appx. 156.

[22] *See also id.* ("The Renewed MTWR appears to be an attempt by Plaintiffs to avoid the bankruptcy court exercising its duties in response to Judge Boyle's remand."); *id.* at 15 ("It is difficult to see Plaintiffs' strategy as anything other than an attempted end-run around the bankruptcy court.")

[23] Trans. at 50 ("Second, this does feel like a second bite at the apple, to use that worn-out metaphor. I think substantially the same arguments were made, albeit in a differently-worded pleading maybe to Judge Boyle, again, back in 2021. I guess it was June 29th, 2021 when the plaintiffs first argued that the district court should keep this matter and, among other things, argued 28 U.S.C. 157(d). This involved consideration of both Title 11 and other laws of the United States. So it's sort of a second reason on top of untimeliness that I think this has already been asked for once and denied.")

36.     On February 6, 2023, Plaintiffs filed the Objection. In the Objection, Plaintiffs now argue that they were somehow duped into believing the MTD Order was merely a report and recommendation and that there was no need for them to file or press a motion to withdraw the reference earlier in the case. Plaintiffs also spend significant time arguing that the Bankruptcy Court impermissibly relied on (a) this Court's previous rejection of Plaintiffs' arguments regarding mandatory withdrawal as dispositive and (b) the fact that the Complaint asserted "administrative expense" claims.

37.     As set forth above and below, Plaintiffs' Objection is built on a series of material omissions or misstatements of fact that attempt to justify Plaintiffs' failure to timely file a motion to withdraw the reference, to avoid addressing the law, to obfuscate the Bankruptcy Court's actual findings, and to give Plaintiffs a "second bite at the apple."

### III.     ARGUMENT

38.     A district court "shall, **on timely motion of a party**, so withdraw a proceeding if … resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added).

### A.     The Motion to Withdraw the Reference Was Untimely

39.     A motion to withdraw the reference must be "timely." 28 U.S.C. § 157(d). Section 157(d) does not define "timely," but it has been interpreted as requiring a motion be made at the first reasonable opportunity. *See In re Fresh Approach, Inc*., 51 B.R. 412, 415-16 (Bankr. N.D. Tex. 1985) (finding a motion to withdraw the reference untimely when filed sixteen days after the court entered its decision on the matter); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007, n.3 (9th Cir. 1997). ("A motion to withdraw is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding'"); 9 COLLIER ON BANKRUPTCY

¶ 5011.01[2] ("[M]otions for mandatory withdrawal must be made as soon as it is apparent that it is necessary for the district court to hear the proceeding").

40.     Failure to timely move for mandatory withdrawal is dispositive, especially when delay would prejudice the non-movant or is an attempt to forum shop. *See Fresh Approach,* 51 B.R. at 415 ("[A] motion to withdraw reference should not be used as a vehicle to protract litigation and delay controversies. 'If a motion for withdrawal of reference is not timely made, it will almost certainly be held that the provisions of the second sentence of section 157(d) have been waived'") (citations omitted); *see also Hupp v. Educ. Credit Mgmt. Corp*., 2007 U.S. Dist. LEXIS 68199, at *8-10 (S.D. Cal. Sept. 13, 2007) ("Courts have found a motion to withdraw the reference untimely when a significant amount of time has passed since the moving party had notice of grounds for withdrawing the reference or where the withdrawal would have an adverse effect on judicial economy"); *Drew v. WorldCom, Inc*., 2006 U.S. Dist. LEXIS 52318, at *8-9 (S.D.N.Y. July 26, 2006) (denying motion to withdraw reference, noting "there is no legitimate justification for the length of the delay in this case," and "the timing of [movants'] motion gives rise to a strong inference that he is attempting to forum shop").[24]

41.     Here, the Motion is untimely and can only be interpreted as an attempt to forum shop and delay adjudication. The Complaint was referred by this Court to the Bankruptcy Court on September 20, 2021. Plaintiffs did not file a motion to withdraw at that time. Two months later on November 18, 2021, Plaintiffs presented the Proposed Motion but failed to file it even after the

---

[24] *See also In re Rickel & Assoc., Inc.*, 2003 U.S. Dist. LEXIS 23136, at *6 (S.D.N.Y. Dec. 24, 2003) (finding motion to withdraw reference untimely where "the bankruptcy court had devoted substantial resources to the claim," and "defendants [] seek to retrace in the district court substantially the same journey previously taken in the bankruptcy court," noting "the potential prejudice … of having a case dislodged from its steady progression in the bankruptcy court's calendar to be placed on that of the district court."); *In re New York Trap Rock Corp.*, 158 BR 574, 577 (S.D.N.Y. 1993) (finding untimely a motion to withdraw reference filed after a "short" period of three months where "time span was rich with events," and the circumstances strongly indicated forum shopping—"[f]orum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success.")

Stay Motion was denied. Instead, on November 23, 2021, the parties spent considerable time and resources arguing *the merits* of the Original MTD in the Bankruptcy Court (notwithstanding Plaintiffs' misstatements to the contrary). In March 2022, the Bankruptcy Court entered the MTD Order, and, subsequently, the parties spent more time and resources during 2022 arguing Plaintiffs' appeal of the MTD Order in this Court without objection.

42.     On September 2, 2022 (nearly a year after the reference was enforced), this Court remanded the Action to the Bankruptcy Court for further proceedings consistent with this Court's opinion and order. Still, Plaintiffs delayed filing the Motion.

43.     Rather than file the Motion at the first reasonable opportunity, Plaintiffs allowed Highland to spend more time and resources briefing and filing the Renewed MTD in October 2022. Plaintiffs did not file their Motion until November 18, 2022—minutes before opposing the Renewed MTD and (a) 14 months after this Court first referred the Action to the Bankruptcy Court, (b) 12 months after the Bankruptcy Court's hearing on the merits of Plaintiffs' federal claims, (c) eight months after the Bankruptcy Court entered its MTD Order, (d) two months after this Court ruled on Plaintiffs' appeal of the MTD Order and remanded the Action to the Bankruptcy Court, and (e) one month after Highland filed its Renewed MTD.

44.     Plaintiffs are also impermissibly forum shopping. The Motion was filed *after* the Bankruptcy Court shared its view in the MTD Order that Plaintiffs' federal claims should be dismissed—arguably *per se* forum shopping. *See, e.g., City Bank v. Compass Bank*, 2011 U.S. Dist. LEXIS 129654, at *16 (W.D. Tex. Nov. 9, 2011) ("Motions to withdraw pose significant risks of forum shopping because a party can first observe the bankruptcy judge's rulings, and then decide whether to bring the motion.")

45.     As the Bankruptcy Court found, the Motion is untimely, prejudicial to Highland and its creditors, and an attempt at forum shopping. Plaintiffs' arguments to the contrary are simply unavailing.

46.     *First*, Plaintiffs argue their Motion was timely because the Renewed MTD (filed in September 2022) was supposedly the first time Plaintiffs' federal law claims would be heard on their merits and therefore the first time a motion to withdraw the reference was "ripe."[25] That claim is false. The Original MTD—filed in 2021—argued the federal claims should be dismissed on the merits and precipitated Plaintiffs' 2021 arguments to this Court on mandatory withdrawal. *See* ¶ 13 *supra*. Moreover, Plaintiffs addressed Highland's arguments on the merits in their response to the Original MTD in 2021 (*see* ¶ 14 *supra*), and the parties argued the merits of Plaintiffs' federal claims to the Bankruptcy Court in November 2021 (*see* ¶ 21 *supra*). The Renewed MTD (filed in October 2022) simply reiterated Highland's arguments on the merits of the federal claims originally raised in the Original MTD. There were no changed circumstances, and, as the Bankruptcy Court found, Plaintiffs' attempt to re-assert arguments for mandatory withdrawal in late 2022 that were first made to this Court in 2021 is the proverbial "second bite at the apple." *See* n.23 *supra*.[26]

47.     *Second*, Plaintiffs now allege—for the first time—that they believed the Bankruptcy Court was sitting as this Court's "magistrate" and that the MTD Order was a report and recommendation, not a final order. Objection ¶¶ 15-17, 41-43. That disingenuous argument is

---

[25] Plaintiffs also bizarrely argue that the "Bankruptcy Court prudently stayed ruling on the merits of the Renewed [MTD] … until the question of mandatory withdrawal of the reference could be resolved." Objection ¶ 34. This argument is baseless. Plaintiffs did not request a stay nor did the Bankruptcy Court grant one.

[26] Again, and notwithstanding the ink spilled by Plaintiffs, the Bankruptcy Court never found, and Highland never contended, that this Court denied the relief requested by Plaintiffs in their "cross-motion." The most that can be said is that this Court granted Highland's Motion to Enforce notwithstanding Plaintiffs' arguments in their self-styled "cross-motion."

14

belied by their own conduct. Plaintiffs—sophisticated entities represented by sophisticated counsel—appealed the MTD Order to this Court; they did not file an objection under Rule 9033(b).[27] *See* ¶ 25 *supra*. Moreover, on January 23, 2023, Plaintiffs' counsel admitted that the MTD Order was a final order during oral argument:

> I will say this. I will say this, we are faced with and we have to argue about and we're dealing with a final order. ***The Court issued a final order, and the plaintiff appealed***. So there's no question that the Court, whether or not it advised the parties, it made the decision to issue a final order. And that order was appealed. So there's no question, ***we're not challenging the fact that the Court issued a final order. The Court did***. And the final order went to the Court of Appeals, and it took time at the Court of Appeals to issue a ruling.

Ex. 2, Appx. 125-126 (emphases added).

48.     ***Finally,*** Plaintiffs make the preposterous argument that Highland "bullied" them out of filing the Proposed Motion in November 2021 by threatening sanctions and that they were therefore justified in not seeking withdrawal of the reference until November 2022—a year later. Objection ¶¶ 13-14. This argument should be rejected out of hand. Plaintiffs provide no evidence to support it, and it makes no sense. Plaintiffs were able to file the Motion in 2022 notwithstanding Highland's alleged bullying.

49.     For the foregoing reasons, the Report's recommendation that the Motion be denied as untimely should be accepted.

**B.     The Renewed MTD Does Not Require Mandatory Withdrawal**

50.     Even if the Motion were timely (it is not), the Bankruptcy Court properly found that the Complaint does not require mandatory withdrawal of the reference. Courts interpreting 28 U.S.C. § 157(d) have found that simply asserting that federal law is implicated is insufficient;

---

[27] It beggars belief that Plaintiffs—overseen by James Dondero who personally appealed multiple reports and recommendations to this Court—would believe they were challenging a report and recommendation yet not take advantage of the *de novo* review provided by 28 U.S.C. § 157(c) as they had done multiple times in the past. Civ. Action No. 3:21-cv-00881-X, D.I. 27-1, 27-4, 27-5, 34, 62, 78, 79, 98, 204, 210 (N.D. Tex.).

mandatory withdrawal is to be granted sparingly and only applies when a matter requires something "more than mere application of existing law to new facts." *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953-54 (7th Cir. 1996); *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (mandatory withdrawal requires "significant interpretation, as opposed to simple application, of federal laws"). Courts in the Northern District follow this standard. *See, e.g., In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) ("Before withdrawing the reference, the district court must make an 'affirmative determination' that the relevant non-code legal issues will require substantial and material consideration, and the court must be satisfied that consideration of those federal laws requires 'significant interpretation' on the part of the court …. Withdrawal of reference is not warranted, however, where it is a question of 'straightforward application of a federal statute to a particular set of facts'"); *see also Tex. United Hous. Program, Inc. v. Wolverine Mortg. Partner Ret.*, 2017 U.S. Dist. LEXIS 140992, at *18 (N.D. Tex. Jul. 18, 2017) (citations omitted) ("The undersigned agrees with the position taken by most courts — including '[e]ach district court in the Fifth Circuit that has considered this issue.' …. The Court should construe 'consideration,' as used in 28 U.S.C. § 157(d), to mean 'substantial and material consideration'— at least as to what constitutes consideration of non-title 11 federal law. Consideration is 'substantial and material' where 'the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law'—'rather than the mere application of well-settled law' ….")[28]

---

[28] *See also Burch v. Bank of Am. N.A.*, 2020 U.S. Dist. LEXIS 85100, at 8-9 (N.D. Tex. Jan. 6, 2020) (citations omitted) ("Consistent with the majority view in the Fifth Circuit, 'consideration' … means 'substantial and material consideration.' … To determine whether consideration is 'substantial and material,' a court must undertake analysis of significant open and unresolved issued regarding the non-title 11 law.' … [T]he undersigned has not identified any unsettled questions of law …. Indeed, BOA's Motion to Dismiss … indicates that the application of well-settled law should resolve Burch's claims. Accordingly, mandatory withdrawal is inapplicable."); *S. Pac. Transp. v. Voluntary Purchasing Grps.*, 252 B.R. 373, 382 (E.D. Tex. 2000) (citations omitted)) ("Withdrawal is not mandatory in cases that require only the 'straightforward application of a federal statute to a particular set of facts.' … [W]ithdrawal is in order only when litigants raise 'issues requiring significant interpretation of federal laws that Congress would have intended to [be] decided by a district judge rather than a bankruptcy judge.'")

"[M]andatory withdrawal is to be applied narrowly" to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009), *aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009).

51.     Notably, Plaintiffs ignore this case law and fail to explain how their alleged federal claims require more than the straight-forward application of settled law. Instead, Plaintiffs simply assert their claims implicate federal law and are thus subject to mandatory withdrawal, relying on cases from districts that apply a different standard. But as the Bankruptcy Court found, Plaintiffs' claims are in the nature of a simple two-party dispute: (a) did Highland owe Plaintiffs a fiduciary duty under the Advisers Act; (b) what was the nature of that duty (if any) and was it violated; and (c), if violated, what are the remedies and potential damages?[29] The case law concerning these claims is well-settled and all that is required is an application of that settled law to the facts.

### i.     The Complaint Does Not Require Consideration of Unsettled Law

52.     ***First***, it is well-settled that Rule 206 of the Advisers Act (the only part of the Advisers Act actually cited in the Complaint) creates a fiduciary duty to an investment adviser's "client" (*i.e.* the person or entity that is the counterparty under the investment management agreement but not to underlying investors in the "client." *Goldstein v. SEC*, 451 F.3d 873, 881(D.C. Cir. 2006) ("The adviser owes fiduciary duties only to the fund [*i.e.*, the client], not to the fund's investors … If the investors are owed a duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest" because different investors may have different investment objectives); *see also SEC v. Northshore Asset Mgmt.*, 2008 U.S. Dist. LEXIS 36160, at *18-20 (S.D.N.Y. May 5, 2008) (dismissing a claim that an investment adviser owed a

---

[29] Plaintiffs' originally alleged that their (baseless) RICO claim was grounds to withdraw the reference. As noted by the Bankruptcy Court, because Plaintiffs sought to voluntarily dismiss their RICO claim in their response to the Renewed MTD, it cannot serve as a basis for mandatory withdrawal. Report at 11.

duty to a fund's investors rather than just the fund); *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1016 (N.D. Cal. 2007) (same); *Prohibition on Fraud by Advisers to Certain Pooled Investment Vehicles*, Release No. IA-2628; File No. S7-25-06 (Aug. 3, 2007), Ex. 3, Appx. 232 (Rule 206(4)-8 "does not create under the Advisers Act a fiduciary duty to investors or prospective investors in a pooled investment vehicle not otherwise imposed by law"). All that is required to determine whether Highland owed fiduciary duties to the DAF and CLOH under the Advisers Act is an analysis of the two contracts governing Highland's relationship with Plaintiffs (Ex 4, Appx. 239-261, Ex. 5, Appx. 262-290) to determine whether Plaintiffs were in contractual privity with Highland. This is not complicated and only requires a straightforward application of settled law to the contracts.

53.     ***Second***, an adviser's fiduciary duty to its client (as opposed to investors in its client, such as Plaintiffs) may be satisfied by disclosure. "To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship." *See Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Release No. IA-5248; File No. S7-07-18 (July 12, 2019), Ex. 6, Appx. 312-313. The law is well-established; includes Supreme Court jurisprudence; is not based solely on interpretation of SEC releases; and was recently opined on by this Court in one of Mr. Dondero's numerous appeals of the Bankruptcy Court's orders. *See, e.g., SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 191-92 (1963); *Laird v. Integrated Res., Inc.*, 897 F.2d 826, 831-36 (5th Cir. 1990); *Robare Grp., Ltd. v. SEC*, 992 F.3d 468, 472 (D.C. Cir. 2019); *Goldstein*, 451 F.3d at 881; *Dugaboy Inv. Tr. v. Highland Cap Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351, at *10-11 (N.D. Tex. Sept. 22, 2022) (finding that investor consented to potential conflict when clear disclosure was made). Adjudicating this issue only requires reviewing the advisory contracts to determine if appropriate disclosures were made (they were).

18

54.     ***Third***, even assuming *arguendo* that Highland breached its fiduciary duties under the Advisers Act, the Supreme Court has held that no private right of action exists for such breach under Rule 206 of the Advisers Act (again, the only statute cited by Plaintiffs in the Complaint).[30] *Transamerica Mortg. Advisors v. Lewis*, 444 U.S. 11, 13-14 (1979) ("[W]e hold there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable [on a client]"); *Corwin v. Marney, Orton Inv*., 788 F.2d 1063, 1066 (5th Cir. 1986) (affirming dismissal of claims under the Advisers Act "because the investors had no private causes of action"); *NexPoint*, 2022 U.S. Dist. LEXIS 142029, at *9-10 ("[U]nder the [Advisers Act] … there is no private right of action to bring a claim pursuant to [Section 206 of the Advisers Act].")

55.     The federal law issues regarding breach of fiduciary duty under the Advisers Act are well-settled. There is no basis for mandatory withdrawal of the reference.

**ii.     Plaintiffs Cite No Applicable Case Law**

56.     The majority of Plaintiffs' cases rely on an interpretation of 28 U.S.C. § 157(d) that requires withdrawal when the application of any federal, non-bankruptcy law is material to the resolution of the matter regardless of whether such law is settled or requires more than simple

---

[30] Plaintiffs imply that they asserted a cause of action in the Complaint under Rule 215 of the Advisers Act. Objection ¶¶ 60-61. They did not, and Rule 215 cannot serve as a basis for mandatory withdrawal of the reference. Even if it could, the case law on Rule 215 is also well-settled and does not warrant mandatory withdrawal. Rule 215 imposes no fiduciary duty of any kind but simply provides, under clear Supreme Court precedent, "a limited private remedy … to void an investment advisers contract, but … confers no other private causes of action, legal or equitable." *Transamerica*, 441 U.S. at 24; *see also Corwin*, 788 F.2d at 1066 ("The Investors seek damages, not the voiding of an investment advisers contract, and there is no such private cause of action based on [Section 215]"). That remedy applies only when an advisory agreement was made in violation of a provision of the Advisers Act, not for subsequent breaches of the agreement. *NexPoint Diversified Real Es. Tr. v. Acis Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 142029, at *10 (S.D.N.Y. Aug. 9, 2022) (Section 215 "'voids a contract only where the contract would be invalid under that principle—that is, where the contract was made illegally or requires illegal performance.'") (citations omitted). The contours of Rule 215 (and its lack of applicability to the Complaint) are well-settled and would only require the application of that settled case law to the facts of this case.

application of settled law to the facts.[31] That is not the standard in this District, which requires mandatory withdrawal only when a court "must undertake analysis of significant open and unresolved issues regarding the non-title 11 law—rather than the mere application of well-settled law" to the facts. *See* ¶ 49 *supra*. Plaintiffs' cases are therefore inapposite.[32]

57.     Plaintiffs also cite cases relying on the anti-fraud provisions in the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").[33] Many of these cases apply the wrong standard for mandatory withdrawal. Regardless, they are distinguishable. The Advisers Act contains its own anti-fraud provision in Rule 206, which provision is the foundation of Plaintiffs' Complaint. But, as discussed above, the Supreme Court has held that no private right of action exists under Rule 206 (unlike comparable provisions in the Securities Act and Exchange Act), and dismissal is required under the well-settled precedent. *See* ¶ 53 *supra*.

58.     The other cases cited by Plaintiffs are simply inapposite and involve complex cases dissimilar to that before this Court. *In re Electro-Mechanical Indus.*, 2008 Bankr. LEXIS 5177, at

---

[31] *Murray v. Warren Cnty. Sheriff's Dept. (In re Avex, Fibers-Front Royal, Inc.)*, 1991 U.S. Dist. LEXIS 2273, 1991 WL 25460 (E.D. Pa. Feb. 25, 1991) ("The second sentence of § 157(d) mandates withdrawal of a reference if both Bankruptcy Code … and non-Code law are considered."); *Laborers' Pension Tr. Fund-Detroit & Vicinity v. Kiefer (In re Kiefer)*, 276 B.R. 196, 196-201 (E.D. Mich. 2002) (adopting a literal approach and requiring mandatory withdrawal when any non-bankruptcy federal law is implicated); *In re Contemporary Lithographers, Inc.*, 127 B.R. 122, 127 (M.D.N.C. 1991) ("This court does not believe that an unclear or complex federal statute is a prerequisite to mandatory withdrawal under Section 157(d) … None of these authorities, however, command that the non-bankruptcy federal law in a case must not only be considered, and determinative of some essential question, but also must be so vague and uncertain as to require 'significant interpretation'"); *Price v. Craddock*, 85 B.R. 570, 573 (D. Colo. 1988) (finding mandatory withdrawal applied when case required application of non-bankruptcy federal law regardless of whether the law was settled); *Am. Freight Sys. v. ICC (In re Am. Freight Sys.)*, 150 B.R. 790, 794-95 (D. Kan. 1993); *In re Hartley*, 55 B.R. 781, 785 (N.D. Ohio 1985); *Burger King Corp. v. B-K of Kan., Inc.*, 64 B.R. 728, 731 (D. Kan. 1986) (finding mandatory withdrawal applies when non-bankruptcy federal law is required regardless of whether the law is unsettled); *Schlein v. Golub (In re Schlein)*, 188 B.R. 13, 13 (E.D. Pa. 1995) (same).

[32] The only potentially relevant case cited by Plaintiffs is *In re American Solar King*, 92 B.R. 207 (W.D. Tex. 1988), which found that mandatory withdrawal applied whenever there would be "substantial and material consideration" of non-bankruptcy federal law, regardless of whether that law was settled or unsettled. *Solar King* was decided in 1988 and is directly contradicted by the prevailing case law in this Circuit.

[33] *Contemporary Lithographers*, 127 B.R. at 123-25; *Price*, 85 B.R. 571; *Haigler v. Dozier (In re Dozier Fin., Inc.)*, 2018 U.S. Dist. LEXIS 220354, at * 3-13(D.S.C. Sept. 6, 2018); *Solar King*, 92 B.R. at 210-11.

*9 (Bankr. S.D. Tex. Feb. 20, 2008) (withdrawing reference where patent claim involved "not simply a straightforward application of federal law to the facts."); *Nat'l Gypsum*, 145 B.R. at 542 (withdrawing reference where "the issues in the patent infringement litigation are 'complex.'") The only mention of withdrawal in *In re Bevill* is one sentence stating "AMC's Chapter 11 case was withdrawn from the Bankruptcy Court to the District Court pursuant to 28 U.S.C. § 157(d)" without discussion of why the reference was withdrawn or whether the withdrawal was permissive or mandatory. 67 B.R. 557, 563 (D.N.J. 1986).

59.     Plaintiffs also argue that the issues raised in the Complaint "involve[] more consideration than what meets the eye" (Objection ¶ 61) because of a pending appeal on Rule 215 of the Advisers Act to the Second Circuit. *NexPoint Diversified Real Est. Fund v. Acis Cap. Mgmt., L.P., et al.*, 21-cv-4384 (2d Cir.). This claim is intentionally misleading. First, Plaintiffs do not plead Rule 215 so that Rule cannot be a basis for mandatory withdrawal. Second, the plaintiff in the Second Circuit appeal is NexPoint Diversified Real Estate Fund (f/k/a NexPoint Strategic Opportunities Fund) ("NSOF"). NSOF is yet another entity controlled by Mr. Dondero, Plaintiffs' control person.[34] *See* Confirmation Order ¶ 19 (finding NSOF, among others, was "marching pursuant to the orders of Mr. Dondero"), *aff'd* 48 F.4th 419, 434-35 (5th Cir. 2022); *see also* Ex. 7, Appx. 340-343. Third, the Southern District of New York dismissed the underlying action as being wholly inconsistent with settled case law. *NexPoint*, 2022 U.S. Dist. LEXIS 142029 at *10. Plaintiffs cannot assert the same meritless claim against multiple parties in multiple courts, appeal the dismissal of the claim from one court, and then rely on that baseless appeal to argue to another court that their claim involves an unsettled question of law.

---

[34] Plaintiff's counsel in the Southern District of New York action is the same counsel representing Plaintiffs here.

60.     Plaintiffs also ignore the fact that bankruptcy courts routinely analyze federal securities laws. In fact, and as set forth above, the Bankruptcy Court reviewed Plaintiffs' federal law claims in 2021 although it did not rule on them. *Charitable DAF Fund*, 2022 Bankr. LEXIS 659, at *39-40. Further, Highland was heavily involved in the bitterly contested bankruptcy of Acis Capital Management, L.P. ("Acis"). *In re Acis Cap. Mgmt., L.P.*, *et al*, Case No. 18-30264-sgj11 (Bankr. N.D. Tex. 2019). In *Acis*, Highland (then controlled by Mr. Dondero) asserted in the Bankruptcy Court that Acis's plan of reorganization violated the Advisers Act and federal securities law**,** alleging Acis was liable to Highland for breach of fiduciary duties under the Advisers Act—nearly identical claims to those in the Complaint. Ex. 8, Appx. 346-377.

61.     Moreover, 11 U.S.C. § 523(a)(19) requires bankruptcy courts to determine if there were violations of "federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934) …"[35] in connection with discharge. As part of this analysis, bankruptcy courts look to, among other things, the applicability of the Advisers Act. *See, e.g., Tillman Enters., LLC v. Horlbeck (In re Horlbeck)*, 589 B.R. 818, 832 (Bankr. N.D. Ill. 2018) ("bankruptcy courts have jurisdiction to determine liability on an underlying securities claim for purposes of § 523(a)(19)" and "liability under § 523(a)(19) cannot be supported by an alleged violation" of the Advisers Act as there is no private remedy or "actionable claim"); *Tradex Glob. Master Fund SPC, Ltd. v. Pui-Yun Chui (In re Pui-Yun Chui)*, 538 B.R. 793, 806-08 (Bankr. N.D. Cal. 2015) (same).[36] Bankruptcy court analysis of the Advisers Act, however, is not limited to

---

[35] Section 3(a)(47) of the Exchange Act defines "securities laws" as "the Securities Act of 1933 (15 U.S.C. 78a et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), the Sarbanes-Oxley Act of 2002, the Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.), the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), *the Investment Advisers Act of 1940* (15 U.S.C. 80b et seq.), and the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa, et seq.)" (emphasis added).

[36] *See also King v. Skolness (In re King)*, 624 B.R. 259, 301 (Bankr. N.D. Ga. 2020) (bankruptcy court could determine liability under state and federal securities laws for purposes of § 523(a)(19)); *Holzhueter v. Groth (In re Holzhueter)*, 571 B.R. 812, 822-24 (Bankr. W.D. Wis. 2017) (same).

Section 523(a)(19). *See Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*, 485 B.R. 604 (Bankr. W.D. Wash. 2013) (dismissing complaint alleging that defendant owed a fiduciary duty to an investor under the Advisers Act for failure to state a claim); *Living Benefits Asset Mgmt. v. Kestrel Aircraft Co. (In re Living Benefits Asset Mgmt.),* 587 B.R. 311, 317-20 (N.D. Tex. 2018) (affirming bankruptcy court's rulings under the Advisers Act), *aff'd* 916 F.3d 528 (5th Cir. 2019); *In re Acis Cap. Mgmt. L.P.*, Case No. 18-30264-sgj11, D.I. 549 (Bankr. N.D. Tex. Sept. 4, 2018) (Ex. 9, Appx. 378-385) (finding Advisers Act did not prohibit assumption of a management agreement under Section 365). Plaintiffs do not address these cases.

62.     Under the controlling case law in this District, mandatory withdrawal applies only when "an analysis of significant open and unresolved issues" of federal law is required. As set forth above, that is not the case here.

## IV.     <u>CONCLUSION</u>

WHEREFORE, Highland respectfully requests that the Court overrule the Objection in its entirety, adopt the Bankruptcy Court's Report, and grant such other relief as the Court deems proper.

DOCS_NY:47155.8 36027/003

Dated: March 21, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

24